837 P.2d 316

**Mary Lou ROSS, Claimant–Appellant,**

v.

**TUPPERWARE MANUFACTURING COMPANY/PREMARK, Employer, and Standard Fire Insurance Company, Surety, and State of Idaho, Industrial Special Indemnity Fund, Defendants–Respondents.**

No. 18973.

Supreme Court of Idaho,
Boise, February 1992, Term.

Sept. 1, 1992.

M. Karl Shurtliff, Boise, for claimant-appellant.

Imhoff & Lynch, Boise, for respondent surety and employer. Thomas P. Baskin, III argued.

Benoit, Alexander, Sinclair, Doerr, Harwood and High, Twin Falls, for State of Idaho, Indus. Sp. Indem. Fund. Thomas B. High argued.

Before BAKES, C.J., BISTLINE, JOHNSON and McDEVITT, JJ., and REINHARDT, J. Pro Tem., by designation of the Court.

PER CURIAM.

I

The claimant, Mary Lou Ross, was employed by the Tupperware Manufacturing Company. On October 23, 1987, while at work, she stumbled over a pallet and fell on her right side and hip. She left work early that day because of the pain in her hip and back. The following day she reported for work, but was given a different job where she could work in a sitting position. She continued with her work at Tupperware and did not lose any time from work until she was laid off when the plant closed.

After the accident she sought treatment from several doctors in hopes of relieving the pain she was experiencing. On November 3, 1987, the claimant told Dr. John Howar that she had chronic pain in the right groin from hip arthritis which predated the accident and also had lumbar

pain which was attributed to arthritis in the spine, but that the pain had increased following the fall at work on October 23, 1987.

The pain continued to increase. In September of 1988, Dr. Howar suggested replacement of the hip as a possible course of treatment for the problem. Claimant saw Dr. Jeffrey Hessing, a Boise orthopedic surgeon on October 19, 1988. He recommended that she undergo a right total hip replacement. A further opinion was obtained by Dr. Warren Sorensen, an orthopedic surgeon at Sun Valley, Idaho, in January, 1989. He also recommended hip replacement surgery. On June 29, 1989, Dr. Dennis Gordon, a Salt Lake City, Utah, orthopedic surgeon performed hip replacement surgery on the claimant.

Claimant applied for worker's compensation benefits and sought a finding that the costs related to this procedure were compensable as the result of her October 1987 accident. The matter was assigned by the Commission to referee Robert C. Youngstrom, who conducted a hearing on November 1, 1989. Claimant argued she was entitled to recover medical expenses related to the replacement of her hip and that she was entitled to temporary disability income benefits subsequent to that procedure. After taking evidence on the cause, the referee concluded that the dispositive issue was whether "the Claimant's accident permanently aggravated or accelerated the development of the osteoarthritic condition of the claimant's right hip, so as to necessitate the performance of the surgical procedure at an earlier date than it would have been performed in the absence of the accident."

The referee concluded that the claimant had failed in her burden of proof because she had not established by a preponderance of the evidence that the fall bore a causal relationship to the performance of the surgical procedure with a reasonable degree of medical probability. Of particular importance is Finding of Fact XIV:

In summary, the Referee finds that the physicians who examined the Claimant in close proximity to her accident do not indicate a probability that the Claimant's underlying condition was permanently aggravated or accelerated by the accident. There is clearly a difference of opinion between the physicians who examined her a year or more following the accident as to the effect of the accident and injury upon the underlying condition. The Referee finds the opinion of Dr. Hessing to be more persuasive because it appears to the Referee that Dr. Hessing has a more accurate history and description of the Claimant's pre-existing condition and symptoms than does Dr. Gordon. The Referee has also examined the records of Claimant's medical treatment for a period of time prior to her injury, which appear in Exhibit 1, sub-part 9, which disclose that the Claimant had been diagnosed as having osteoarthritis prior to the injury and that her hospitalization in September, 1987, prior to the injury, was apparently for gastric problems which could have been precipitated by excessive use of aspirin, which in one report is stated to be 10 to 12 aspirin per day. The report indicates that the Claimant had arthritis in her large joints and had been taking Clinoril, which is a medication prescribed for arthritis and is the same medication prescribed subsequent to her injury. The Referee believes that the history obtained by Dr. Slickers and Dr. Howar that the Claimant had significant problems with her right hip and leg prior to the injury is an accurate one, and is a history which was not given full consideration by Dr. Gordon in reaching his opinion. Based upon a careful review of the evidence, the Referee finds that the need for the artificial hip replacement when it was performed was not caused by the Claimant's injury and that the underlying arthritic condition was not permanently aggravated or accelerated by the injury.

Accordingly, the referee recommended that the Commission deny the claimant's claim for workers compensation benefits. The Commission adopted the referee's findings and conclusions. Claimant filed a notice of appeal to this Court.

II

 The Court will review the Commission's findings of fact only to determine whether there is substantial competent evidence to support them. *Dolph v. Hecla Mining,* 119 Idaho 715, 810 P.2d 249 (1991); I.C. § 72–732(1). The crucial finding in this case is the Commission's determination that Dr. Hessing's opinion that the fall did not cause the need for hip replacement was more persuasive than Dr. Gordon's opinion that the injury was the cause.

The claimant argues on appeal that the four reasons cited by the referee in making the credibility determination "are not supported by the record or by logical inferences to be drawn from the record...." In essence, the claimant asks us to look at the reasons behind the credibility determination to determine whether those underlying facts are supported by substantial evidence. Since in her view, the underlying facts are not supported by substantial and competent evidence, the credibility determination is likewise unsupported.

 The evaluation and weighing of conflicting testimony is left to the sound discretion of the Industrial Commission and will not be disturbed on appeal unless clearly erroneous as a matter of law. *Nycum v. Triangle Dairy Co.,* 109 Idaho 858, 862, 712 P.2d 559, 563 (1985). Likewise, the determination of the credibility of a witness is best left to the trier of fact who has had an opportunity to observe and judge the demeanor of the witness. *Cox v. Denny's Restaurants,* 112 Idaho 321, 323, 732 P.2d 290, 292 (1987). We decline claimant's invitation to conduct a microscopic review of the Commission's credibility determinations because such are often times by necessity made on intuitive and inchoate reasons, thus impervious to an after the fact review of a cold record. Accordingly, continuing the Court's policy of deferring to the credibility determination of the Commission, we affirm the Commission's finding that the fall did not cause or accelerate the claimant's need for a hip replacement.

III

 The respondents, claiming that claimant's appeal is frivolous, seek expenses and attorney fees on appeal under I.A.R. 11.1. That rule provides, in part:

The signature of an attorney or party [on a notice of appeal or other pleading in the Court] constitutes a certificate by him that he has read [the pleading]; that to the best of his knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If [such pleading] is signed in violation of this rule, the court, upon motion or its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the [pleading] including a reasonable attorney's fee.

Because we believe that the claimant, by and through her attorney, has made a good faith argument for the modification of the law, we decline respondent's invitation to impose sanctions in this case. Even though we have not been fully persuaded by that argument, I.A.R. 11.1 sanctions are nevertheless inappropriate.

IV

The decision of the Industrial Commission is affirmed. Respondents' request for attorney fees is denied; however, we award costs to the respondents.