853 P.2d 544

**Burton BAKER, Claimant–Respondent,**

v.

**LOUISIANA PACIFIC CORPORATION,
Employer, Defendant–Appellant.**

**No. 19430.**

Supreme Court of Idaho,
North Idaho Term, October 1992.

March 11, 1993.

Rehearing Denied June 22, 1993.

Sims, Liesche, Newell, Kelso, Wallace & Wallace, Coeur d'Alene, for defendant-appellant. Starr Kelso argued.

Steven C. Verby, Sandpoint, for claimant-respondent.

BISTLINE, Justice.

This is an appeal from a decision of the Industrial Commission. The employer, Louisiana Pacific Corporation, challenges the award of permanent partial disability benefits to the employee, Burton Baker. We affirm the order of the Industrial Commission.

## BACKGROUND

Claimant-respondent Burton Baker was a sawmill worker for most of his adult life. On October 21, 1982, while working at the Moyie Springs sawmill for defendant-appellant Louisiana Pacific Corporation, Baker suffered an injury. He was attempting to adjust some firehoses and fell approximately eight to ten feet onto a cement floor seriously injuring his wrists.

Baker was hospitalized for three days and both wrists were in casts for three months. Baker voluntarily returned to work without pay in order to exercise his arm slightly more than three months following his industrial accident. He was released for and returned to full-time work at his former job as edgerman on March 1, 1983, within six months of the accident. Baker had difficulty operating the edge-clipper the first month but later was able to do his work without difficulty.

Baker worked about three months until June 27, 1983, when his union went on strike; as a former local and regional union member, Baker did not cross the picket line. He received a letter from Louisiana Pacific informing him he had until August 22, 1983, to return to work or his job would be filled. However, Baker did not return to work and continued to strike. He was terminated and received strike pay for about a year. On or about April 29, 1984, he began working part-time for the United States Forest Service.

Sometime around March 26, 1987, Baker was examined by Dr. Brinkman, a Spokane, Washington, hand surgeon. After examination and evaluation of nerve conduction studies, Dr. Brinkman concluded Baker suffers from a chronic low-grade median nerve compression syndrome. At that time, he did not believe Baker had a "significant disability." No rating was given.

On December 1, 1987, Baker experienced involuntary opening of his left hand. Dr. Hill testified that x-rays revealed "possible mild degenerative joint change and/or incongruity" secondary to the fracture. Dr. Hill stated on January 12, 1988, that degenerative changes can slowly progress although he saw no debilitating impairment at that time.

Dr. Blaisdell, a board-certified orthopedic surgeon from Sandpoint, examined Baker on August 24, 1989. Baker reported aching in his left wrist about 25% of the time, especially when it is cold and damp and that the joint would stiffen in bad weather. Baker also reported that he cannot drive for long periods of time and that his left wrist would swell with increased activity. He also complained of loss of strength and the inability to engage in his previous avocations of playing a musical instrument and golfing. Dr. Blaisdell diagnosed:

> Healed, slightly angulated fracture involving the distal right radial shaft with minimal angulation and shortening at the fracture site. Probable fracture involving the articular surface of the [left] distal radius with minimal shortening and possible early arthritic changes secondary to injury to the articular cartilage of the distal radius.

Baker's Ex. 1.

Dr. Blaisdell also conducted a physical capacities examination in which he concluded that Baker's ability to lift, carry, push, and pull were severely impaired. In sum, Baker can never lift or carry anything more than 20 pounds with his left hand or more than 50 pounds with his left and right hands. He can occasionally lift and carry over 10 pounds with both hands and frequently lift and carry with both hands up to 10 pounds. He can only push and pull occasionally with the right and left hands. Dr. Blaisdell assigned a 14% impairment rating of the whole person broken down as follows: left arm (4%), right arm (3%), pain (3%), diminished pronation of right forearm (1%), and lifestyle (3%). Dr. Blaisdell explained by way of post-hearing deposition that x-rays he took showed early stages of post-traumatic arthritis. He also testified that the arthritis will only worsen with time.

On May 25, 1990, Dr. Hill examined Baker. The doctor found symptomatology compatible with post-traumatic osteoarthritis of the left wrist with chronic pain and activity limiting discomfort and loss of

strength. Moreover, he was of the opinion that this condition "would not be expected to improve with time, indeed will more likely increase in severity with time." Baker's Ex. 3. On June 25, 1990, Dr. Hill agreed with a 14% impairment rating rendered by Dr. J.S. Blaisdell.

Dr. Sears of the Spokane Orthopaedic & Fracture Clinic, examined and evaluated Baker on September 13, 1990, at the request of Louisiana Pacific. Dr. Sears gave Baker an impairment rating of 4% of the left upper extremity and 3% of the right upper extremity. According to Dr. Blaisdell, this translates to 4% of the whole person. (However, Dr. Blaisdell also explained that the orthopedic section of the AMA Guides does not allow for pain.)

On October 8, 1990, Dr. Goldberg examined Baker and conducted essentially the same range of motion examinations as did the other doctors. Although he did not consider the AMA Guides as "gospel," Dr. Goldberg rated Baker between 8% to 12% of the whole person based on the guides. Dr. Goldberg was of the opinion that Baker could no longer perform the work required at his former job.

Based on this evidence, the Commission concluded that Baker suffers from a 9% impairment of the whole person. After assessing the medical and non-medical factors pursuant to I.C. §§ 72–423, 72–425 and 72–430, the Commission concluded that Baker had suffered a permanent partial disability of 35% of the whole person, which includes the permanent partial impairment rating of 9%. Accordingly, the Commission ordered Louisiana Pacific to pay compensation to Baker.

Louisiana Pacific appealed.

## ISSUES ON APPEAL

1. Was there substantial and competent evidence to support the Commission's finding of nine percent impairment?

2. Does an injured employee who is replaced because he refuses to cross a union picket line lose the statutory entitlement to partial disability benefits?

3. Was there substantial and competent evidence to support the Commission's finding of partial disability?

4. Is Baker entitled to attorney fees on appeal?

## DISCUSSION

*1. The Commission's finding of permanent partial impairment is supported by substantial and competent evidence.*

The first issue in this case is whether the Commission's finding of partial impairment is supported by substantial and competent evidence. The relevant statute in this regard is I.C. § 72–424, which provides:

**Permanent Impairment Evaluation—** "Evaluation (rating) of permanent impairment" is a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members.

The factor of pain should be considered and included in the impairment evaluation as it relates to a functional loss. *Urry v. Walker & Fox Masonry Contractors,* 115 Idaho 750, 755, 769 P.2d 1122, 1127 (1989). A physician's opinion as to the extent of impairment is advisory only and is not binding upon the Commission. Here, the Commission concluded, that Baker suffers from a 9% impairment of the whole person.

Louisiana Pacific argues that the Commission's findings of fact in this regard are not supported by substantial and competent evidence. In particular, appellant argues that:

a) Dr. Hill's 1990 evaluation of Baker is without validity because Dr. Hill did not personally examine Baker, he had not been provided Dr. Brinkman's report and was pressured by Baker's counsel to give a evaluation favorable to Baker.

b) Dr. Brinkman did not find any significant disability.

In essence, Louisiana Pacific asks this Court to find Dr. Brinkman to be more credible than Drs. Hill and Blaisdell. We decline that invitation. The Court has recently held it will defer to the Commission's finding as to the credibility of medical experts. *Ross v. Tupperware*, 122 Idaho 641, 643, 837 P.2d 316, 318 (1992). There is no reason to depart from that rule in this case.

### 2. Idaho Code § 72-403 does not preclude Baker from receiving permanent partial disability benefits.

■ The next issue is whether, within the meaning of I.C. § 72-403, Baker is precluded from receiving permanent partial disability benefits because he refused to cross a picket line, which refusal resulted in his permanent replacement. I.C. § 72-403 provides:

**72-403. Penalty for malingering—**Denial of compensation.—If a **partially disabled** employee refuses to seek suitable work or refuses or neglects to work after suitable work is offered to, procured by or secured for him, he shall not be entitled to any compensation.

(Emphasis added.)

Louisiana Pacific asserts that Baker should be barred from receiving any compensation due to his refusal to work after suitable work was secured for him, in other words, Louisiana Pacific contends that Baker, by his refusal to cross the picket line and by his refusal to respond to Louisiana Pacific's letter calling him to return to work, is now barred from any compensation award.

As is plain from the text of the statute, Idaho Code § 72-403 is limited to partially disabled workers who refuse to accept suitable work. Thus, the threshold question to be answered is whether Baker was a partially disabled employee at the time he refused to return to work. We conclude he was not partially disabled at that time. Baker returned to work on March 1, 1983, after his doctor had released him to work without any limitations. At that time, Baker's doctor was of the opinion that Baker did not have any permanent disability. Further, Baker had been working for approximately three months before the strike was called. As Baker was not a partially disabled employee when he lost his job, I.C. § 72-403 does not apply.[1]

### 3. The Commission's finding that Baker suffered disability in excess of impairment is supported by the evidence.

■ The final issue raised is whether the Commission erred in finding a 35% permanent partial disability. The rating of a permanent partial disability is "an appraisal of the injured worker's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors provided in section 72-430, Idaho Code." I.C. § 72-425.

The determination of the existence and extent of permanent partial disability is one of fact. Accordingly, our review is limited to the question of whether the Commission's finding is supported by substantial and competent evidence. *Roberts v. Asgrow Seed Co.*, 116 Idaho 209, 211, 775 P.2d 101, 103 (1989).

Louisiana Pacific argues that the evidence does not support the award because: (1) Baker was able to perform his old job after the injury; (2) his current job is just as physically difficult, if not more difficult than his job at the sawmill; and, (3) the testimony of the vocational expert was not entitled to any weight because he based his testimony on invalid assumptions. We disagree.

First, even though Baker did return to his old job, that was in 1983 and it does not logically follow that his condition is the same now as it was ten years ago. Dr. Blaisdell, who examined Baker in 1989, concluded Baker could not perform the lifting required at the sawmill and, additionally,

---

1. Furthermore, in the author's opinion, Louisiana Pacific did not offer Baker a "suitable job" within the meaning of the statute, being that the job offer was contingent on Baker crossing a picket line and thereafter becoming that lowly form of life aptly known as a "scab" laborer.

Baker's post-traumatic arthritis would continue to worsen. Dr. Goldberg specifically testified that Baker could not go back to his old job.

Second, we acknowledge that although the job description of Baker's current job makes it seem that he is currently performing heavy labor, there was testimony that the job had been substantially modified so that Baker could continue in his employment. In light of our deferential standard of review, we cannot conclude the Commission erred in accepting that testimony as true.

Finally, Louisiana Pacific's argument that the vocational expert's testimony was not valid is nothing more than a request to have the Court reweigh the evidence. Louisiana Pacific attacked the validity of the vocational expert's testimony at the hearing, yet the Commission chose to accept his testimony as true. The evaluation of evidence is left to the sound discretion of the Commission and this Court will not second-guess the Commission's determination. *Ross v. Tupperware*, 122 Idaho at 643, 837 P.2d at 318.

We have reviewed the record and find that there is evidence to support the Commission's finding of a 35% permanent partial disability.

*4. Baker is entitled to attorney fees on appeal.*

■ Baker has asked the Court to award him attorney fees on appeal. Idaho Code § 72–804 permits any court presiding in a worker's compensation case to award attorney fees to a claimant if the court determines that an employer or surety has contested a claim for compensation "without reasonable ground." Baker asserts attorney fees should be awarded because Louisiana Pacific's appeal was frivolous. We agree.

The employer's arguments as to the existence of the impairment and the extent of Baker's disability were nothing but efforts to have this Court reweigh evidence on appeal. Further, Louisiana Pacific's contention that I.C. § 72–403 barred recovery by Baker is utterly without merit for the

reasons explained above. Under these circumstances, an award of attorney fees to Baker is appropriate under I.C. § 72–804.

## CONCLUSION

We affirm the order of the Industrial Commission. Baker's request for attorney fees on appeal is granted. Costs on appeal to Baker.

McDEVITT, C.J., and JOHNSON and TROUT, JJ., concur.

BAKES, J. Pro Tem., concurs (following his retirement on February 1, 1993).