# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49511

VERONICA ARREOLA,  )
)
   Claimant-Appellant,  )
)      **Boise, December 2022 Term**
v.  )
)      **Opinion Filed: June 23, 2023**
SCENTSY, INC., Employer; and GRANITE  )
STATE INSURANCE CO., Surety,  )      **Melanie Gagnepain, Clerk**
)
   Defendants-Respondents.  )
)

Appeal from the Idaho Industrial Commission.

The order of the Commission is <u>vacated</u>, and the case is <u>remanded</u> with instructions for further proceedings.

Goicoechea Law Offices, Chtd., Boise, for Appellant. Justin Aylsworth argued.

Bowen & Bailey, LLP, Boise, for Respondents. Rachael O' Bar argued.

_____

BRODY, Justice.

This appeal arises out of the Idaho Industrial Commission's order denying Veronica Arreola's petition for a declaratory ruling and motion for reinstatement of compensation. Arreola brought her petition and motion against the Granite State Insurance Co. ("the Surety"), when the Surety, without an order from the Commission—as permitted by our interpretation of Idaho Code section 72-434 in *Brewer v. La Crosse Health & Rehab*, 138 Idaho 859, 71 P.3d 458 (2003)—invoked section 72-434 to suspend Arreola's compensation payments. In the Surety's unilateral and private determination, suspending Arreola's compensation payments was appropriate because the Surety had purportedly scheduled Arreola's Independent Medical Exam ("IME") with its physician at a "reasonable" time, I.C. § 72-433(1), and Arreola had "unreasonably" failed to submit to or had obstructed the scheduled IME by not appearing, I.C. § 72-434. Arreola's petition and motion disputed these private conclusions by the Surety. Arreola

1

also maintained that only the Commission has the authority to adjudicate the underlying medical exam dispute and determine whether there is a factual basis to execute the enforcement mechanisms in Idaho Code section 72-434. The Commission denied the petition and motion, instructing Arreola to instead proceed through a complaint for relief.

For the reasons discussed below, we conclude that our decision in *Brewer* interpreting Idaho Code section 72-434 was manifestly wrong. Only the Commission has the authority to adjudicate medical exam disputes, and to enforce that adjudication through the enforcement mechanisms in section 72-434 by ordering the suspension of both the injured employee's compensation payments and "right to take or prosecute any proceedings" under the Worker's Compensation Law ("the Law") until the failure or obstruction by the injured employee related to the requested medical exam ceases.

In light of this, Arreola's concern that the Surety's unilateral execution of the enforcement mechanisms in section 72-434 also suspended her right to file a "complaint" to seek relief is now abated. With *Brewer* overruled and the authority of the Commission clarified, there is no legal impediment to filing a "complaint" below, as initially preferred by the Commission. Nevertheless, we do not affirm. Given the shift in the legal landscape with *Brewer* overruled, we vacate the Commission's order denying the petition and motion, and remand with instructions that the Commission: (1) order payment of prospective compensation payments that might be owed until such time as the Commission determines that payments are not required under section 72-434; (2) reconsider the appropriate procedural mechanism for adjudicating the underlying factual dispute; and (3) instruct the Surety what procedural mechanism it must use to obtain an order authorizing it to lawfully suspend compensation payments.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In May 2021, Arreola experienced an industrial accident, and injured her right shoulder while using a mallet in the course of her employment with Scentsy, Inc. Arreola timely made a worker's compensation claim for benefits. Two weeks later, her claim was "accepted" as "compensable" by the Surety and benefits later commenced. A few weeks after that, Arreola underwent an MRI and, one week later, visited a treating orthopedic physician. After reviewing the MRI and examining Arreola, the treating physician diagnosed Arreola with a "traumatic" right rotator cuff tear, recommended that her injury "requires surgical intervention[,]" and thereafter sought authorization from the Surety to perform surgery on Arreola's shoulder. The

2

physician also noted that Arreola had "an acute rotator cuff tear [that] needs to be repaired sooner [rather] than later," and emphasized that "time is of the essence."

The Surety did not immediately authorize surgery; instead, it placed the request from the treating physician "under review[.]" Three weeks into review, the Surety sent Arreola a notice instructing her to submit to an IME with Dr. Jeffrey Hessing twenty days after the notice date. The Surety had apparently scheduled the IME without coordinating with Arreola. Six days before the scheduled IME, Arreola's attorney responded to the notice, and informed the Surety that Arreola could not attend the IME at the scheduled time because it was in "direct conflict" with Arreola's "long-standing" obligations to care for a relative. Arreola's attorney also requested that the Surety coordinate the scheduling of all IMEs with his office.

Five days after Arreola's attorney responded, the Surety sent another notice, instructing Arreola to submit to an IME with Dr. Hessing at a rescheduled date and time. Apparently, the Surety had again unilaterally scheduled the IME. Four days after the second notice was sent, Arreola's attorney responded and informed the Surety that Arreola could not attend the rescheduled IME for the same reason as before: Arreola had a prior, "unavoidable obligation" during the rescheduled day and time to care for her relative. Arreola's attorney again requested that the Surety coordinate the scheduling of all IMEs with his office. One day before the rescheduled IME, the Surety responded to Arreola's attorney that the IME would not be rescheduled a second time: "I have given your client ample opportunity to attend an IME. If she fails to attend the IME tomorrow her time loss benefits will be stopped."

Arreola did not attend the rescheduled IME. Three days later, the Surety issued a "Notice of Claim Status" to Arreola, and explained that due to Arreola's "failure to attend the medical examination[,] [the Surety was] suspending [Arreola's] temporary total disability benefits under Idaho Code [section] 72-434." The Surety added that Arreola's benefits "will be suspended until [Arreola] attend[s] an independent medical examination with Dr. Hessing's office." In the meantime, Arreola's treating physician still had not received authorization from the Surety to perform the recommended surgery.

Subsequently, Arreola sought intervention from the Commission. Instead of filing a complaint with a motion for an emergency hearing, Arreola filed a motion for reinstatement of compensation, or in the alternative, a petition for a declaratory ruling from the Commission to reinstate her compensation based on the Surety's unlawful execution of section 72-434. Arreola

3

also sought "sanctions" and attorney fees against the Surety for its "punitive" use of section 72-434 to arbitrarily "penalize" Arreola for missing the IME that the Surety had unilaterally scheduled, and allegedly knew Arreola could not attend due to a preexisting conflict.

The Commission did not reach the merits of Arreola's request for relief. Instead, the Commission denied Arreola's motion and petition as procedurally improper and declined to hold a hearing on the underlying factual dispute or to issue a declaratory ruling reinstating compensation payment. The Commission explained that because Arreola had not yet filed a complaint, Arreola's motion was not properly before the Commission. Thus, it could not be ruled upon. As for Arreola's petition for a declaratory ruling, the Commission declined to use this procedural mechanism to resolve the underlying dispute even though the Commission's Judicial Rules of Practice and Procedure specifically authorize it to issue a declaratory ruling. Instead, the Commission instructed Arreola that the preferred procedural path was for her to pursue relief through administrative litigation, by filing a complaint and a motion for an emergency hearing before an assigned referee.

Arreola timely appealed from the denial of her petition for a declaratory ruling and motion for reinstatement of benefits.

## II.     STANDARD OF REVIEW

"In reviewing a decision of the Commission, this Court exercises free review over the Commission's legal conclusions." *Clark v. Shari's Mgmt. Corp.*, 155 Idaho 576, 579, 314 P.3d 631, 634 (2013). "The interpretation of a statute is a question of law over which this Court exercises *de novo* review." *Kelly v. TRC Fabrication, LLC*, 168 Idaho 788, 791, 487 P.3d 723, 726 (2021) (quoting *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 210, 76 P.3d 951, 954 (2003)). "When doing so, this Court 'must liberally construe the provisions of the worker's compensation law in favor of the employee, in order to serve the humane purposes for which the law was promulgated.' " *Clark*, 155 Idaho at 579, 314 P.3d at 634 (quoting *Jensen v. City of Pocatello,* 135 Idaho 406, 413, 18 P.3d 211, 218 (2000)).

## III.     ANALYSIS

On appeal, Arreola first focuses on the underlying factual dispute. Arreola alleges that the Surety refused to coordinate with Arreola in scheduling the IME on the dates and times she was available. Thus, according to Arreola, there is no factual basis to execute Idaho Code section 72-434 and suspend her compensation payments because the Surety did not schedule an IME for a

4

"reasonable" time, *see* I.C. § 72-433(1), and Arreola did not "unreasonably" fail to submit to or otherwise obstruct the IME, *see* I.C. § 72-434. However, we do not reach this underlying factual dispute that the Commission never addressed in denying Arreola's petition and motion below. Instead, Arreola's appeal turns on questions of law raised by Arreola related to the proper interpretation and operation of Idaho Code section 72-434.

Citing to case law from this Court interpreting the Idaho Worker's Compensation Law, along with Idaho Code section 72-707, Arreola maintains that only the Commission can adjudicate disputes related to employer-directed medical examinations arising under Idaho Code sections 72-433(1) and 72-434 (like the one here); and then through the enforcement mechanisms in section 72-434 for such adjudications, only the Commission can suspend an injured employee's payment of compensation and "right to take or prosecute any proceedings" under the Law for the time "such failure or obstruction" by the injured employee "continues."

Based on this, Arreola contends the Surety here acted unlawfully when it unilaterally executed the enforcement mechanisms in Idaho Code section 72-434 without first obtaining an order from the Commission. Part of this execution included suspending payment of Arreola's compensation benefits, and Arreola maintains that this execution also necessarily suspended her "right to take or prosecute any proceedings" under the Law because the dual mechanisms in section 72-434 are both conjoined by "and"—and made mandatory by the use of "shall" in the statute. In other words, Arreola argues that the Surety's unilateral execution of section 72-434 creates a "Catch-22" because it simultaneously suspends both her compensation payments and her ability to challenge that suspension and obtain reinstatement through the procedural mechanism the Commission insisted on below: the filing of a complaint.

On this note, Arreola essentially asks this Court to revisit our interpretation of Idaho Code section 72-434 in *Brewer v. La Crosse Health & Rehab*, 138 Idaho 859, 864, 71 P.3d 458, 463 (2003), and conclude that *Brewer* was manifestly wrong when it held that private employers and sureties *could* unilaterally enforce and execute section 72-434 (as the Surety did here) without first obtaining authority to do so through an order from the Commission. In the alternative, Arreola argues that if *Brewer*'s interpretation of section 72-434 is correct, then the statute is unconstitutional under the nondelegation doctrine and due process.

Under her nondelegation argument, Arreola argues that if Idaho Code section 72-434 unilaterally allows a private surety to suspend both payment of compensation, and the

5

employee's "right to take or prosecute any proceedings" under the Law to challenge the surety's action—then the Idaho Legislature has, through section 72-434, unconstitutionally delegated power to private sureties (who are adverse to injured employees) to make the sureties the "judge, jury, and executioner" of medical exam disputes arising under sections 72-433(1) and 72-434. In support of her argument, Arreola points to, among other things, the United States Supreme Court decision in *Carter v. Carter Coal Co.*, 298 U.S. 238, 310–12 (1936), where the Court held that Congress had unconstitutionally delegated power to private producers and miners to fix the maximum hours of labor—instead of a disinterested governmental agency.

Under her due process argument, Arreola argues that if Idaho Code section 72-434 permits a private surety to unilaterally suspend an injured employee's compensation payments without notice and before a meaningful hearing is held in front of a neutral decision-maker (i.e., the Commission)—particularly when entitlement to (i.e., liability for) compensation is undisputed (as it is here)—then Idaho Code section 72-434 violates the Due Process Clauses of both the United States Constitution and the Idaho Constitution. According to Arreola, those clauses require a pretermination hearing in these circumstances under both constitutions.

Consistent with the doctrine of constitutional avoidance, we do not reach Arreola's alternative constitutional arguments under the nondelegation doctrine and due process. *See Miller v. Idaho State Patrol*, 150 Idaho 856, 864, 252 P.3d 1274, 1282 (2011) ("The general rule of constitutional avoidance encourages courts to interpret statutes so as to avoid unnecessary constitutional questions."). Idaho Code section 72-434 can be interpreted consistently with the Worker's Compensation Law to avoid these constitutional questions, and in doing so, it is clear that our interpretation of section 72-434 in *Brewer* was manifestly wrong.

**A. Only the Commission has the authority to adjudicate medical exam disputes under Idaho Code sections 72-433(1) and 72-434, and order the implementation of the enforcement mechanisms in section 72-434.**

"When there is controlling precedent on questions of Idaho law 'the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.' " *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (quoting *Houghland Farms, Inc. v. Johnson,* 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)). In *Brewer v. La Crosse Health & Rehab*,

we held that an employer or surety could unilaterally execute Idaho Code section 72-434 and suspend payment of compensation to an injured employee without first obtaining an order from the Commission because nothing "expressly nor implicitly" required the employer or surety to "obtain an order of the Commission prior to suspending benefits for obstruction of an IME." 138 Idaho 859, 864, 71 P.3d 458, 463 (2003). This interpretation of Idaho Code section 72-434 in *Brewer*, effectively reading section 72-434 as delegating adjudicatory and enforcement authority to employers and sureties over injured employees, was manifestly wrong.

The fundamental misstep in *Brewer* was to read the language of Idaho Code section 72-434 in isolation instead of in context of the Idaho Worker's Compensation Law as a whole. This approach is required here because unlike Idaho Code section 72-435 which expressly authorizes the Commission to suspend or reduce compensation of an injured employee who persists in certain injurious practices—Idaho Code section 72-434 is completely silent on who is authorized to invoke and execute its enforcement mechanisms for a medical exam dispute. *See Arneson v. Robinson*, 59 Idaho 223, 239, 82 P.2d 249, 255 (1938) (explaining that the Workmen's Compensation Act of 1917 must be "construed and considered as a whole" to answer a particular question the statutory scheme is silent on where the scheme was passed as a complete act); 1971 Idaho Sess. Laws 422, 422–85 (recodifying, as a complete act, the Workmen's Compensation Act of 1917 into the Worker's Compensation Law, I.C. §§ 72-101 to 72-805 (1971)).

When the relevant provisions under the Law are read in context as a whole, it plainly does not empower or authorize an employer or surety to unilaterally invoke and execute the enforcement mechanisms in Idaho Code section 72-434 without first obtaining an order from the Commission. Accordingly, *Brewer*'s interpretation of section 72-434 was "manifestly wrong, [and] stare decisis does not require that we continue an incorrect reading of [that] statute." *Greenough*, 142 Idaho at 592–93, 130 P.3d at 1130–31.

We begin where we did not in *Brewer*, by applying our well-settled approach to statutory interpretation that forbids reading provisions in isolation:

> Statutory interpretation begins with the literal language of the statute. *Provisions should not be read in isolation, but must be interpreted in the context of the entire document*. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the

7

clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Nelson v. Evans*, 166 Idaho 815, 820, 464 P.3d 301, 306 (2020) (emphasis added) (citation omitted).

The four relevant statutes under the Worker's Compensation Law to interpreting the plain meaning of Idaho Code section 72-434 are sections 72-707, 72-712, 72-433(1), and 72-434:

> *All questions arising under this law*, if not settled by agreement or stipulation of the interested parties with the approval of the commission, except as otherwise herein provided, *shall be determined by the commission*.

I.C. § 72-707 (emphasis added).

> Upon application of any party to the proceeding, or when ordered by the commission or a member thereof or a hearing officer, referee or examiner, and *when issues in a case cannot be resolved by pre-hearing conferences or otherwise, a hearing shall be held for the purpose of determining the issues*.

I.C. § 72-712 (emphasis added).

> After an injury or contraction of an occupational disease and during the period of disability the employee, if requested by the employer or ordered by the commission, shall submit himself for examination *at reasonable times and places* to a duly qualified physician or surgeon.
>
>      . . . .

I.C. § 72-433(1) (emphasis added).

> If an injured employee *unreasonably* fails to submit to or in any way obstructs an examination by a physician or surgeon designated by the commission or the employer, the injured employee's *right to take or prosecute any proceedings under this law shall be suspended* until such failure or obstruction ceases, *and no compensation shall be payable* for the period during which such failure or obstruction continues.

I.C. § 72-434 (emphasis added).

When considered as a whole, Idaho Code sections 72-707, 72-712, 72-433(1), and 72-434 plainly operate in at least two ways. Contrary to *Brewer*, neither way delegates authority to an employer or surety to unilaterally adjudicate a dispute, and thereafter execute the enforcement mechanisms in Idaho Code section 72-434. First, Idaho Code section 72-707 prevents an employer or surety and an injured employee from settling "by agreement or stipulation" a medical exam dispute without obtaining a stamp of "approval" from the Commission. This is because there is nothing "otherwise herein provided" in the Worker's Compensation Law that allows private settlement. *See* I.C. §§ 72-101 to 72-929; *see also* I.C. § 72-404 (allowing

8

parties to, in certain circumstances, compromise and settle "claims" for compensation without Commission approval—but not disputes under sections 72-433(1) and 72-434). Second, if the employer or surety and the injured employee have a medical exam dispute that arises under sections 72-433(1) and 72-434—and cannot settle it with the Commission's stamp of approval through, for example, an informal pre-hearing conference—then the dispute "shall be determined by the [C]ommission." *See* I.C. §§ 72-707, 72-712.

Accordingly, when there is such an unresolved dispute, before any "suspen[sions]" pursuant to Idaho Code section 72-434 *can* be executed, the Commission must adjudicate the dispute through a hearing. *See* I.C. § 72-712 (explaining that the Commission "shall" hold a "hearing" to determine issues "in a case that cannot be resolved by pre-hearing conferences or otherwise"); *see also Curr v. Curr*, 124 Idaho 686, 690, 864 P.2d 132, 136 (1993). Only after the Commission has adjudicated the dispute, and made findings of fact, can the Commission determine whether it "shall" execute the dual enforcement mechanisms in Idaho Code section 72-434 and simultaneously suspend both the injured employee's: (1) payment of compensation; and (2) "right to take or prosecute any proceedings" under the Law—"until such failure or obstruction" by the injured employee related to the medical exam requested by the employer or surety "ceases." *See* I.C. §§ 72-434, 72-433(1), 72-707, 72-712.

That said, if an employer or surety desires to have the enforcement mechanisms in section 72-434 operate against an injured employee, the employer or surety *must* request an order from the Commission. Nothing in the Idaho Worker's Compensation Law authorizes the employer or surety to privately and unilaterally determine its scheduling of an exam was reasonable while the employee's conduct was unreasonable, and then execute the dual enforcement mechanisms in section 72-434 by suspending an injured employee's benefits until such time as the employer or surety determines, in its discretion, that the employee's "failure or obstruction" has adequately "cease[d]." Pursuant to the plain language of Idaho Code section 72-707, this authority rests solely with the Commission. If the Commission orders the injured employee's compensation and "right to take or prosecute any proceedings" under the Law suspended after adjudicating a medical exam dispute, then the Commission's *order* is what gives the surety or employer the authority to suspend payment of compensation.

With this clarified, we turn to Arreola's pressing concern that the Surety's unilateral execution of Idaho Code section 72-434 also suspended her "right to take or prosecute any

9

proceedings" under the Law before the Commission; i.e., it suspended her ability to file a complaint to challenge the Surety's actions at all. For the reasons below, it did not.

The provisions in section 72-434 that suspend an employee's "right to take or prosecute any proceedings" under the Law if the employee "unreasonably" fails to submit to, or otherwise obstructs a requested medical exam have been part of Idaho's worker's compensation scheme in substantially the same form since its original enactment in 1917:

> Sec. 29.   After an injury and during the period of disability, *the workman, if so requested by his employer*, or ordered by the Board *shall submit himself to examination, at reasonable times and places, to a duly qualified physician or surgeon designated and paid by the employer. . . . If a workman refuses to submit himself to or in any way obstructs such examination, his right to take or prosecute any proceedings under this Act shall be suspended* until such refusal or obstruction ceases, and *no compensation shall be payable* for the period during which such refusal or obstruction continues.

1917 Idaho Sess. Laws 252, 267–68 (emphasis added); 1971 Idaho Sess. Laws 422, 461; I.C. §§ 72-433(1), 72-434 (2023).

To give effect to all the words in section 72-434 and render none superfluous, *Nelson*, 166 Idaho at 820, 464 P.3d at 306, the phrase "to take or prosecute any proceedings" must be interpreted in two parts. The meaning of "to . . . prosecute" any proceeding is relatively straightforward: to "prosecute" is "[t]o follow up" or "to carry on an action or other judicial proceeding" that has already commenced. *See* Prosecute, *Black's Law Dictionary* (2nd ed. 1910). On the other hand, the meaning of "to take" any proceeding is not so straightforward.

Between 1911 and 1917, when worker's compensation schemes were first enacted in the United States, many states—including Idaho—borrowed from the English Workmen's Compensation Act of 1897 ("Act of 1897"), and the English Workmen's Compensation Act of 1906 ("Act of 1906"), which amended the Act of 1897. *See McNeil v. Panhandle Lumber Co.*, 34 Idaho 773, 781, 203 P. 1068, 1071 (1921); *Skelly*, 62 Idaho at 198, 109 P.2d at 624; *McCormick v. Cent. Coal & Coke Co.*, 232 P. 1071, 1074 (Kan. 1925); Jeremiah Smith, *Sequel to Workmen's Compensation Acts*, 27 HARV. L. REV. 235, 247 (1914). However, states did not borrow uniformly, and not all borrowed the "take" language in the analogous provision of their worker's compensation scheme. *See, e.g.*, 1911 Mass. Acts 998, 1003 ("If he refuses to submit himself for the examination, or in any way obstructs the same, his right to compensation shall be suspended, and his compensation during the period of suspension may be forfeited.").

10

Relevant here, under the English Acts of 1897 and 1906, to "take" a proceeding for compensation was equivalent to "commencing" a proceeding to bring or enforce a claim of compensation against an employer. *See* Act of 1897, 60 & 61 Vict. ch. 37 § 1(2)(b) (explaining that a workman may either commence proceedings under the Act or "take" proceedings under the common law against a third party, but not both), *reprinted in* M. Robert-Jones, *Handbook on the Workmen's Compensation Act 1897*, at 12 (London, Cardiff: Western Mail, Ltd., 5th ed. 1898), https://archive.org/details/handbookonworkme00robe/page/12/mode/2up (last visited June 12, 2023); Act of 1906, 6 Edw. 7 ch. 58 § 1(2)(b) (using the term "take" in the same manner), *reprinted in* V. R. Aronson, *The Workmen's Compensation Act 1906*, at 71 (London, T. F. Unwin 1909), https://archive.org/details/workmenscompens00britgoog/page/71/mode/2up (last visited June 12, 2023); Act of 1897, 60 & 61 Vict. ch. 37 § 1(4) ("If, within the time hereinafter in this Act limited for taking proceedings. . . ."); Act of 1906, 6 Edw. 7 ch. 58 § 1(4) (using the term "taking proceedings" in the same manner); *see also* Act of 1906, 6 Edw. 7. ch. 58 § 6 (explaining a workman's right to claim compensation versus his right to "take" proceedings at common law for damages against a third party); *see, e.g.*, *Clatworthy v. R. & H. Green, Ltd.*, 86 L. T. 702 (June 4, 1902) (explaining that a widow of a workman was "entitled to take proceedings under the Act [of 1897] to enforce her claim" of compensation), *reprinted in* 4 R. M. Minton-Senhouse, *A Digest of Workmen's Compensation Cases*, at 153 (London, Butterworth & Co., 2d ed. 1904), https://archive.org/details/workmenscompens00coltgoog/page/n164/mode/2up (last visited June 12, 2023).

Importantly, except for a few terms, the relevant provision in Idaho's Act of 1917—now recodified in a substantially similar form in Idaho Code sections 72-433(1) and 72-434—borrowed directly from the analogous provisions in the English Workmen's Compensation Act of 1906:

> (4) Where a workman has given notice of an accident, he shall, if so required by the employer, submit himself for examination by a duly qualified medical practitioner provided and paid by the employer, and, if he refuses to submit himself to such examination, or in any way obstructs the same, *his right to compensation, and to take or prosecute any proceedings under this Act in relation to compensation, shall be suspended* until such examination has taken place.
>
> . . . .

(14) Any workman receiving weekly payments under this Act shall, if so required by the employer, from time to time submit himself for examination by a duly qualified medical practitioner provided and paid by the employer. If the workman refuses to submit himself to such examination, or in any way obstructs the same, *his right to such weekly payments shall be suspended* until such examination has taken place.

(15) . . . . If a workman, on being required so to do, refuses to submit himself for examination by a medical referee to whom the matter has been so referred as aforesaid, or in any way obstructs the same, *his right to compensation and to take or prosecute any proceeding under this Act in relation to compensation, or, in the case of a workman in receipt of a weekly payment, his right to that weekly payment, shall be suspended until such examination has taken place*.

. . . .

(20) Where under this schedule a right to compensation is suspended no compensation shall be payable in respect of the period of suspension.

Act 1906, 6 Edw. 7 ch. 58, sched. I, paras. 4, 14, 15, 20 (emphasis added), *reprinted in* V. R. Aronson, *The Workmen's Compensation Act 1906*, at 212–32 (London, T. F. Unwin 1909), https://archive.org/details/workmenscompens00britgoog/page/222/mode/2up (last visited June 12, 2023).

Notably, the rules enacted and adopted under the English Act of 1906—no different than the analogous provision in Idaho Code section 72-434 today—did *not* allow employers to unilaterally suspend either the injured employee's payment of compensation or the right "to take or prosecute" any proceedings when an injured employee allegedly refused to submit to or obstructed a medical exam requested by an employer. *See* Workmen's Compensation Rules 1907, 6 Edw. 7 ch. 58, Rule 55, *reprinted in* V. R. Aronson, *The Workmen's Compensation Act 1906*, app. A, at 307 (London, T. F. Unwin 1909).

Instead, if a dispute arose, employers were required to first "apply" to the relevant committee, arbitrator, or judge to *request*—through notice and a meaningful hearing—that the injured employee's rights to compensation and "to take or prosecute" any proceedings be suspended. *See id*. The English Act of 1906, through its adopted rules, even provided a standard form for an employer to give notice to the employee that the employer "intend[ed] to apply" to a judge at a future hearing "for an order suspending" the employee's "right to compensation . . . and to take or prosecute any proceedings under [the Act of 1906] in relation to compensation . . . on the ground that [the employee] refuse[s] to submit [themselves] to medical

12

examination as required by [the employer]," in accordance with paragraphs 4, 14, or 15 of the "first schedule" to the Act of 1906. *See id.* Form 52, app. B, at 399, https://archive.org/details/workmenscompens00britgoog/page/399/mode/2up (last visited June 13, 2023); *see id.* Rule 84, app. A, at 326 (adopting standard forms under the Act of 1906).

Accordingly, the term "to take" in section 72-434, as it has existed since Idaho's original Act of 1917 when it was first borrowed from the English Acts of 1897 and 1906, is synonymous with "commencing" a proceeding to claim or enforce a claim of compensation. Under the modern Worker's Compensation Law in Idaho, an injured employee does this by filing "an application requesting a hearing" with the Commission, I.C. § 72-706, or as the Commission has seen to put it, by filing a "complaint" with the Commission. *See* Judicial Rule of Practice and Procedure ("J.R.P.") 3(A)(1) (2023) (changing the term "application" in I.C. § 72-706 to "complaint").

In light of this, it was reasonable for Arreola to maintain that, under *Brewer*, the Surety's unilateral invocation of section 72-434 simultaneously suspended both her payment of compensation and right "to take or prosecute any proceedings" under the Worker's Compensation Law to then bar the filing of a complaint. However, with *Brewer*'s interpretation of section 72-434 overruled and our clarification of the Commission's authority, Arreola's concern of this "Catch-22" flowing from *Brewer* is now abated. As explained above, only the Commission has the authority to—after a hearing adjudicating a medical exam dispute—order that the dual enforcement mechanisms in Idaho Code section 72-434 be enforced and executed against an injured employee. Thus, an order suspending the "right to take or prosecute any proceedings" under the Law necessarily cannot exist until *after* a proceeding with the Commission has already commenced, the issue is adjudicated, and the Commission orders that the dual enforcement mechanisms in section 72-434 be executed.

In the instant case, the Surety unilaterally and privately determined, without an adjudication by the Commission, that the Surety had scheduled the IME at a "reasonable" time and place, I.C. § 72-433(1), and that Arreola had "unreasonably fail[ed] to submit to" or had otherwise "obstruct[ed]" the IME scheduled by the Surety, I.C. § 72-434. From this, and under *Brewer*, the Surety unilaterally executed Idaho Code section 72-434 without the authority of an order from the Commission. Part of this execution included suspending payment of Arreola's compensation. However, in light of the clarifications regarding section 72-434

13

announced today, the Surety had no authority to either unilaterally adjudicate the underlying dispute or execute the dual enforcement mechanisms in section 72-434. Moreover, because no proceeding before the Commission has adjudicated the underlying factual dispute, Arreola's "right to take or prosecute any proceedings" under the Law is necessarily not suspended.

This brings us to the procedural challenge Arreola raises on appeal: Whether the Commission acted in excess of its powers when it denied Arreola's petition for a declaratory ruling and motion for reinstatement of benefits and instead required that she proceed through a complaint and a motion for an emergency hearing to obtain *any* relief. Given our overruling of *Brewer*, and the resulting change in the legal landscape it brings, a decision by this Court at this juncture would be premature. On the one hand, with *Brewer* overruled, there is no longer a procedural impediment to Arreola filing a complaint to pursue and receive relief as initially instructed and procedurally preferred by the Commission. On the other hand, with *Brewer* overruled, a surety or employer must have a procedural mechanism to adjudicate medical exam disputes. Accordingly, it is now necessary for the Commission to reconsider the appropriate procedural mechanism, under its adopted Judicial Rules of Practice and Procedure, for securing a "just, speedy, and economical determination" of the underlying medical exam dispute—and similar disputes between the parties moving forward. *See* J.R.P. 1(A).

Currently, the Commission's Judicial Rules of Practice and Procedure provide at least two procedural pathways: (1) filing a complaint and a motion—to then apply for a hearing, or for an emergency hearing (J.R.P. 3, 8); *or* (2) filing a petition for a declaratory ruling (J.R.P. 15). In light of *Brewer* being overruled today, whether one of these pathways will provide an employee "sure and certain" relief when their compensation payments are *unlawfully* suspended, I.C. § 72-201—*or* provide a surety or employer a "just, speedy, and economical" procedure for *lawfully* suspending payments when an employee refuses to submit to, or obstructs, a requested medical exam, J.R.P. 1(A)—is an issue the Commission must consider in the first instance, including in the circumstances of this case. Pursuant to Idaho Code sections 72-508, 72-707, and 72-708, the Commission may even determine a *new* procedure should be adopted and used to resolve such disputes, particularly where they arise before a complaint is ever filed (like in this case).

For these reasons, we vacate the Commission's decision denying Arreola's motion for reinstatement of benefits and petition for a declaratory ruling. Because our overruling of *Brewer* applies only prospectively, we remand with instructions that the Commission:

14

(1) enter an order directing the Surety to reinstate any *prospectively* owed compensation that Arreola might be entitled to, if any, pending the resolution of the underlying dispute regarding Arreola's past compensation payments;

(2) determine the procedural process governing medical exam disputes under Idaho Code sections 72-433(1) and 72-434; and

(3) determine whether adjudicating the underlying dispute over past compensation should proceed by the filing of a complaint, a petition for declaratory ruling, or some other procedure.

Finally, because no factual findings were made below, we do not reach Arreola's argument, based on the underlying factual dispute, that it is *per se* unreasonable for an employer or surety to—as the Surety allegedly did here—unilaterally schedule a requested medical examination for an injured employee under Idaho Code section 72-433(1). Instead, that issue must be addressed on remand once the Commission determines the appropriate procedural mechanism as instructed above.

## B. Costs and Attorney Fees

Arreola and the Surety both request costs and attorney fees on appeal. Arreola also requests attorney fees for the proceedings below. Costs on appeal are awarded as a matter of course to the prevailing party, unless otherwise ordered by this Court. I.A.R. 40(a). Arreola is the prevailing party on appeal; thus, she is entitled to costs.

As for attorney fees, Arreola is not entitled to fees on appeal, and will only be entitled to fees for the proceedings below if she prevails in the underlying dispute over past compensation benefits and shows that the Surety had no reasonable basis *in fact* to discontinue payments.

Arreola requested fees on appeal, and for the proceedings below, under Idaho Code section 72-804. There are three circumstances in which fees may be awarded under that statute:

> If the commission or *any court before whom any proceedings are brought under this law determines that* [1] the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety [2] neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or [3] *without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law.* In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

15

I.C. § 72-804 (emphasis added).

Typically, "[t]he decision that grounds exist for awarding a claimant attorney fees [under I.C. § 72-804] is a factual determination which rests with the Commission." *Page v. McCain Foods, Inc.*, 155 Idaho 755, 760, 316 P.3d 671, 676 (2014) (quoting *Poss v. Meeker Mach. Shop*, 109 Idaho 920, 926, 712 P.2d 621, 627 (1985) (second alteration in original)). However, attorney fees are also awarded under section 72-804 if an employer or surety contests a claim for compensation "without reasonable ground" through an appeal that is "frivolous[.]" *See Baker v. La. Pac. Corp.*, 123 Idaho 799, 803, 853 P.2d 544, 548 (1993) (awarding fees on appeal when the employer's arguments simply asked the Court to re-weigh the evidence). Accordingly, whether Arreola is entitled to fees on appeal or below because the Surety acted without a "reasonable groun[d]" in discontinuing Arreola's payments implicates a basis for fees in either fact or law under Idaho Code section 72-804. *See Page*, 155 Idaho at 760, 316 P.3d at 676; *Baker*, 123 Idaho at 803, 853 P.2d at 548.

As for the legal basis, the Surety did not discontinue compensation payments "without reasonable ground" in law because at the time it discontinued Arreola's payments, it lawfully did so in reliance on and pursuant to *Brewer*'s interpretation of Idaho Code section 72-434. Although we overrule *Brewer* and clarify the Commission's authority today, the Surety acted pursuant to settled law at the time, defended settled law on appeal, and defended the decision of the Commission instructing Arreola to seek relief through a "complaint" and a motion for an emergency hearing. *See Deon v. H & J, Inc.*, 157 Idaho 665, 672, 339 P.3d 550, 557 (2014) (denying fees under section 72-804 where it was reasonable to request that the Court affirm the Commission's decision below in favor of the employer and surety). Thus, there is no legal basis to award Arreola fees under Idaho Code section 72-804, *for the instant dispute*, on appeal or during the proceedings on remand related to this Court's overruling of *Brewer*.

As for the factual basis, whether the Surety "discontinued payment of compensation" without "reasonable grounds" *in fact* was neither resolved below, nor by this appeal. It remains to be determined whether the Surety scheduled the IME for a "reasonable time[,]" I.C. § 72-433(1), and whether Arreola "unreasonably" failed to submit to or obstructed the scheduled IME, I.C. § 72-434. Accordingly, this factual basis for fees cannot be used to award fees to Arreola for this appeal. *Nevertheless*, because this case is remanded to resolve the underlying dispute over past compensation, the Commission may revisit whether to award fees to Arreola for the entire

16

proceedings below, excluding this appeal, and award fees to Arreola if the Surety discontinued Arreola's past compensation payments without a reasonable basis in fact.

Finally, the Surety's request for attorney fees on appeal is denied. The only legal basis for fees cited by the Surety was for fees through sanctions against Arreola under Idaho Appellate Rule 11.2(a). Under Rule 11.2(a), "[a]ttorney fees can be awarded as sanctions when a party or attorney violates either (a) the frivolous filings clause or (b) the improper purpose clause." *Andrews v. State Indus. Special Indem. Fund*, 162 Idaho 156, 160, 395 P.3d 375, 379 (2017). Here, the test for sanctions has plainly not been met. Arreola's appeal, which brought to this Court's attention its manifestly wrong decision in *Brewer* and the apparent procedural bar flowing from it, was neither frivolous nor filed for an improper purpose. Arreola brought a "good faith argument" to reverse existing law—and has achieved it. *See* I.A.R. 11.2(a).

## IV.    CONCLUSION

For the reasons stated above, the Commission's order is vacated, and this case is remanded for further proceedings with instructions to the Commission. Costs are awarded to Arreola on appeal under Idaho Appellate Rule 40. Arreola and the Surety are denied attorney fees on appeal. However, on remand, the Commission may revisit whether to award Arreola attorney fees under Idaho Code section 72-804, for the entire proceedings below.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN CONCUR.