**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 43618

THOMAS C. MILLARD,          )
          )
     Claimant-Appellant,     )       **Pocatello, September 2016**
          )
v.          )       **2016 Opinion No. 122**
          )
ABCO CONSTRUCTION, INC., Employer;  )      **Filed: November 2, 2016**
and WORKERS COMPENSATION FUND  )
OF UTAH, Surety,          )      **Stephen W. Kenyon, Clerk**
          )
     Defendants-Respondents.     )
          ).

Appeal from the Industrial Commission.

Industrial Commission ruling, <u>affirmed.</u>

Ruchti & Beck Law, Pocatello, for appellant. James D. Ruchti argued.

Bowen & Bailey, Boise, for respondents. R. Daniel Bowen argued.

_____

BURDICK, Justice

Thomas C. Millard appeals the Idaho Industrial Commission's (Commission) ruling that certain medical payments made by the Workers Compensation Fund of Utah on behalf of Millard were payable at the statutorily scheduled fee amounts rather than the full invoiced amounts. Millard argues that the Commission incorrectly applied this Court's holding in *Neel v. Western Construction, Inc.*, 147 Idaho 146, 206 P.3d 852 (2009), by ruling that a surety may deny a claim then still be allowed to pay the medical fee schedule rate so long as the surety makes payment before the Commission issues a decision on compensability. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Millard, a resident of Preston, Idaho, was involved in an industrial accident in October 2006 while working for ABCO Construction, a Utah construction firm. The accident rendered Millard totally and permanently disabled. Millard continues to suffer from back and left lower extremity pain, neck and shoulder pain, and a traumatic brain injury. The Workers Compensation Fund of Utah originally handled Millard's industrial claim as a Utah case, however, once the

case entered litigation, the case was transferred to Pinnacle Risk Management Services, a third-party administrator in Boise (ABCO, Workers Compensation Fund of Utah, and Pinnacle collectively "Surety"). Millard settled his original litigation with a lump sum agreement that left open medical care and related charges.

Part of Millard's ongoing medical care included epidural steroid injections and physical therapy. Millard received epidural injections from Vikas Garg, M.D., between October 2012 and October 2014. He received physical therapy treatments from late August 2011 through December 2011.[1] From October 2012 until October 2013, Millard's visits with Dr. Garg were unauthorized by Surety and Surety refused to pay for those visits. Surety authorized treatment by Dr. Garg beginning in November 2013 and visits from that time up to November 2014 were paid for by Surety.[2]

At the Commission hearing, Millard argued that he was entitled to payment for the October 2012 to November 2013 treatment with Dr. Garg. Millard also argued that he should be reimbursed for his medical expenses related to the epidural injections and physical therapy sessions at the full invoiced rate rather than the scheduled fee rate. Adopting the Referee's proposed findings of fact and conclusions of law as its own, the Commission ruled that pursuant to Idaho Code section 72-432(1) Surety had failed to provide reasonable medical care from October 2012 to November 2013. Accordingly, Surety was required to pay for Millard's treatment with Dr. Garg for the period of October 2012 through November 2013. Furthermore, the Commission ruled that under *Neel*, Millard was entitled to reimbursement at the full invoiced rate for the epidural injections completed between October 2012 and November 2013. The Commission found that the remaining epidural treatments and physical therapy sessions were not subject to *Neel* and payment at the fee schedule rates was appropriate. Millard timely appeals the Commission's ruling that Millard was not entitled to the full invoiced amounts for the epidural injections from November 2013 through October 2014 and the late August 2011 through December 2011 physical therapy sessions.

[1] Millard had at least three different periods of physical therapy that were contested at various times. However, only the August 31, 2011 through December 23, 2011 sessions of physical therapy are the subject of this appeal.
[2] Although Millard began seeing Dr. Garg in October 2012, Surety claims it was not made aware of this fact until September 20, 2013. Beginning in November 2013, Dr. Garg was authorized and Surety began paying for the hospital billings related to the epidural injections. However, Dr. Garg did not bill Surety or send the required written medical reports for each session until August 2014. Up until that point, Dr. Garg had been billing the VA and Medicare for Millard's epidural injections.

2

## II.    STANDARD OF REVIEW

"This Court exercises free review over the Commission's legal conclusions but does not disturb factual findings that are supported by substantial and competent evidence." *Neel*, 147 Idaho at 147, 206 P.3d at 853.

## III.    ANALYSIS

Millard argues that the Commission erred when it ruled that Millard was not entitled to the full invoiced amounts for his epidural treatments from November 2013 to October 2014 and for his late August 2011 to December 2011 physical therapy treatments. Specifically, Millard argues that the Commission misapplied this Court's decision in *Neel* and that the "trigger for payment of medical expenses at the full invoiced amount is the employer's/surety's act of denying payment for the related medical treatment."

In *Neel*, a worker brought a workers compensation claim against his employer and the employer's surety for an injury he sustained during the course of his employment. *Id.* at 146, 206 P.3d at 852. The surety denied the claim. *Id.* After a hearing, the Commission found that the worker was entitled to worker's compensation benefits and ordered the surety to compensate the worker for his injuries and related medical bills. *Id.* The worker submitted medical bills totaling $100,712.71. *Id.* However, after applying the worker's compensation statute for reimbursements, the surety reviewed the bills for reasonableness and only tendered $92,072.71 as payment for the bills. *Id.* at 147, 206 P.3d at 853. The worker then filed a motion requesting the Commission to order the surety to pay the full invoiced amount. *Id.* The Commission granted the motion and held that "because Surety had initially denied the claim, it could not use the worker's compensation regulatory scheme to reduce [the worker's] bills." *Id.* On appeal, we affirmed the Commission's ruling, stating:

> [W]e hold that sureties, having denied a claim subsequently deemed compensable by the Commission, are only permitted to review a claimant's medical bills incurred after the claim is deemed compensable to determine whether such bills are reasonable in accordance with the worker's compensation regulatory scheme. Any medical bills incurred during the time from when the accident occurred to the time when the claim was deemed compensable fall outside the workers' compensation regulatory scheme and may not be reviewed for reasonableness and must be paid in full by the surety.

*Id.* at 149, 209 P.3d at 855.

3

Thus, under its plain language, *Neel* holds that a surety is liable for the full invoiced amounts of a worker's medical bills when (1) the surety denies a claim and (2) that claim is subsequently deemed compensable by the Commission. The question remains, however, what the term "claim" encompasses. Surety argues that "claim" should only refer to the initial or threshold claim of compensability. Millard argues that "claim" encompasses demands made on the employer to pay for medical services, including those made after the initial determination of compensability has been approved. Millard is correct.

Although not cited by either party, *Seward v. Pacific Hide & Fur Depot*, 138 Idaho 509, 65 P.3d 531 (2003), is instructive. In *Seward*, like here, the worker became dissatisfied with his treating doctor and sought treatment from another doctor. *Id*. at 510, 65 P.3d at 532. The new doctor, also like here, treated the worker with epidural injections. *Id.* The worker submitted the bill for payment and the surety denied payment on the grounds that the worker had not obtained prior authorization from the surety to see the new doctor and so the injections were not reimbursable under § 72-432(4). *Id.* In finding for the worker, we stated, "[the worker's] claim for medical expenses incurred seeking care from [the second doctor] is a 'claim' for purposes of I.C. § 72-706(1)." *Id.* at 512, 65 P.3d at 534. Thus, "claim" as used in *Neel* encompasses requests for medical expenses incurred while seeking treatment for the underlying compensable injury.

Here, claims for the 2012 to 2013 injections were denied by Surety. These claims were then deemed compensable by the Commission. Accordingly, the two prongs of *Neel* for these claims are met: (1) the claims were denied; and (2) the claims were later deemed compensable by the Commission. The Commission correctly determined that these medical expenses fell under *Neel* and required payment at the full invoiced amount.

However, the remaining claims, the 2011 physical therapy sessions and the 2013 to 2014 injections do not meet the *Neel* test. The 2011 physical therapy sessions were denied. However, they were never "deemed compensable" by the Commission. Rather, the Commission noted that the bills were paid before the Commission issued its decision and did not rule on whether the claims were wrongly rejected in the first instance. Thus, the second prong of *Neel*, determination of compensability by the Commission, was not met.

As to the 2013 to 2014 injections, neither prong of *Neel* was met. First, the record indicates that Surety authorized injection therapy by Dr. Garg in November 2013, and that after that date all bills properly submitted to Surety in connection with that treatment were paid.

4

Although some of the payments were delayed, at no time does the record reflect a rejection of payment on bills submitted to Surety for injections that took place from 2013 to 2014.[3] Second, there is no determination of compensability of these claims in the Commission's Order. Indeed, the only issue of compensability that is identified by the Commission is for the 2012 to 2013 injections. Therefore, the Commission correctly ruled that the 2011 physical therapy sessions and the 2013 to 2014 injections were not subject to *Neel* and do not require payment at the full invoiced amount.

However, the Commission arrived at this conclusion incorrectly. The Commission stated:

> The trigger for payment of medical bills at full invoice amount under the *Neel* Doctrine [] and IIC decisions discussing *Neel*, is a Commission determination that the unpaid bills at issue are compensable after Defendants have denied a claim. Here, while there were several instances of "eleventh hour reversals" the fact remains *when medical bills are paid prior to a Commission decision of compensability*, the *Neel* Doctrine is inapplicable.

(emphasis added). This is a misstatement of the law under *Neel*. The Commission's interpretation would add a third prong to the *Neel* test—that the bills remained unpaid. Thus, the test under the Commission's interpretation would be: (1) the surety denies a claim; (2) that claim is subsequently deemed compensable by the Commission; and (3) the claim has remained unpaid from the time of initial denial up to the time the Commission issued a determination of compensability. *Neel*, however, does not mention anything about the bills remaining unpaid up to a determination of compensability.

Accordingly, we affirm the Commission but under modified reasoning. *Martel v. Bulotti*, 138 Idaho 451, 453, 65 P.3d 192, 194 (2003) ("This Court may uphold decisions on alternate grounds from those stated in the findings of fact and conclusions of law on appeal.") Specifically, the Commission is affirmed due to the fact that the Commission never deemed the 2011 physical therapy sessions or the 2013 to 2014 injections compensable, and not due to the fact that Surety had paid the bills before the Commission issued its decision.

---

[3] After authorizing Dr. Garg in November 2013, Surety began paying for bills related to the 2013 to 2014 epidural injections. According to Surety, up until August 2014, it only received billings from the Cache Valley Hospital, which is where the injections took place. Surety claims it was unaware that there were separate charges that Dr. Garg was billing because Dr. Garg had not sent it any medical reports and had been billing the VA and Medicare instead of Surety for the injections. In August 2014, Dr. Garg contacted Surety about paying on some outstanding bills because Medicare had stopped paying on them. Surety told Dr. Garg to send the bills and Surety would pay those bills and would pay for the bills Medicare had already paid if Dr. Garg unwounded the Medicare payments and submitted them to Surety. After sorting out the paper work, it appears that all billings related to the 2013 to 2014 injections were ultimately paid for by Surety and that Surety never denied payment for any of the injections performed by Dr. Garg from November 2013 to October 2014.

## IV.    CONCLUSION

We affirm the Commission but with modified reasoning. Costs to respondent.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, **CONCUR.**