# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49940

NICKOLE THOMPSON,

    Claimant-Respondent,

v.

BURLEY INN, INC., Employer, and MILFORD CASUALTY INSURANCE COMPANY, Surety,

    Defendants-Appellants.

Boise, December 2023 Term

Opinion filed: April 2, 2024

Melanie Gagnepain, Clerk

---

Appeal from the Idaho Industrial Commission.

The decision of the Idaho Industrial Commission is <u>affirmed</u>.

Bowen & Bailey, LLP, Boise, attorney for Appellants, Burley Inn, Inc., and Milford Casualty Insurance Company. Michael McPeek argued.

Peterson Parkinson & Arnold, Idaho Falls, attorney for Respondent. Matthew Vook argued.

---

BEVAN, Chief Justice.

This appeal arises from an Idaho Industrial Commission ("Commission") workers' compensation decision that awarded medical benefits to Claimant-Respondent Nickole Thompson based on the full invoice amount under the rule announced in *Neel v. Western Construction, Inc.*, 147 Idaho 146, 149, 206 P.3d 852, 855 (2009). In *Neel*, this Court held that, under Idaho Code section 72-432(1), employers and sureties must pay the full invoiced amount of a worker's compensation claim when: (1) the surety denies the claim; and (2) the claim is later deemed compensable by the Commission. *Id.* Thompson's employer, Appellant Burley Inn, Inc. ("Burley Inn") and the employer's surety, Appellant Milford Casualty Insurance Company ("Milford Casualty"), (collectively "Appellants") argue that this Court should create an exception to the *Neel* "full invoice" doctrine in Medicaid cases, like Thompson's, where Medicaid fully covered an injured worker's medical expenses, primarily because Medicaid providers are prohibited from balance billing (charging Medicaid recipients the difference between the Medicaid payment amount and the full invoice amount). Appellants ask this Court to reverse the Commission's award

1

of medical benefits to Thompson at the provider's full invoice amount and remand the case to the Commission with directions to enter an award for the amount paid by Medicaid. For the reasons discussed below, we affirm the Commission's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

While working in the breakfast room of the Burley Inn on March 28, 2019, Thompson tripped over a stack of mats on her way to a freezer. As she caught herself on a metal food preparation table mid-fall, she experienced a sharp pain in her low back/upper left buttock area. Thompson was initially diagnosed at Riverview Urgent Care in Burley with a lumbar strain and received treatment through May 2019 for left-side lower back pain that radiated into her left leg.

When physical therapy, nonsteroidal anti-inflammatory medications, muscle relaxants, and narcotic pain relievers did not improve her symptoms after two months, Thompson was referred to David Christensen, M.D., at Intermountain Spine in Twin Falls for further evaluation. Christensen evaluated Thompson in early June 2019, and ordered a left hip MRI for a suspected left hip labral tear. Thompson's MRI showed mild to moderate left hip osteoarthritis with cartilage thinning and a left labral tear. After the MRI, Thompson began treatment with William May, M.D., in Twin Falls. In late July 2019, Dr. May performed arthroscopic surgery on Thompson's left hip to debride and repair the labral tear. May also started Thompson on physical therapy.

Appellants did not challenge Thompson's need for this first hip surgery, nor did they dispute that Thompson's symptoms warranting the surgery were caused by her workplace accident. Milford Casualty authorized and paid for the labral repair surgery.

Despite the labral repair surgery, Thompson continued to experience severe pain during physical therapy. In mid-September 2019, Thompson first requested a hip replacement and, during a late-September appointment with May, Thompson was adamant that she wanted a hip replacement. May scheduled Thompson for a second opinion examination with Michael Gustavel, M.D., an orthopedic surgeon in Boise.

Gustavel evaluated Thompson in early October 2019. To determine whether Thompson's symptoms were caused by her hip or her back, Gustavel performed an ultrasound-guided lidocaine and steroid injection in Thompson's hip. Gustavel believed that if the hip injection relieved Thompson's symptoms, it would show that her hip—rather than her back—was the source of her pain, and that she would be a candidate for either a second arthroscopic surgery or a total hip

replacement. The hip injection temporarily relieved Thompson's symptoms, and so Gustavel recommended a total hip replacement.

The disagreement between the parties arose after Gustavel recommended that Thompson receive a hip replacement. Thompson sought authorization for the hip replacement, but Milford Casualty did not approve it. Instead, Milford Casualty scheduled Thompson for an independent medical examination (IME) in early December to be conducted by Dr. Roman Schwartsman, a Boise orthopedic surgeon.

Following the IME, Schwartsman disagreed with Gustavel's diagnosis and recommendation for a hip replacement. He reviewed Thompson's medical records and concluded: (1) Thompson's symptoms were coming from her back (not her hip); (2) her pain was caused by a preexisting condition rather than her workplace fall; and (3) the degree of degenerative change in her hip did not warrant a hip replacement. Schwartsman recommended Thompson be evaluated by Paul Montalbano, M.D., a Boise spine surgeon.

After reviewing Schwartsman's IME report, Milford Casualty denied Thompson's request for hip replacement surgery. Despite the denial, Thompson underwent a hip replacement performed by Dr. May in mid-December 2019. Because Milford Casualty had denied authorization for the procedure, Medicaid, a public benefit for which Thompson qualified, paid for the surgery.

**B. Procedural Background**

Thompson filed a complaint with the Industrial Commission in March 2020 seeking workers' compensation benefits. The Commission's Referee held a hearing in August 2021. At these proceedings, the parties provided arguments and evidence on three main points relevant to the appeal before this Court: (1) whether Thompson's hip replacement was causally related to her work accident of March 28, 2019; (2) whether the *Neel* full invoice rule applied to Thompson's claim for medical benefits; and (3) whether Thompson should be awarded attorney fees.

On the first issue, the Referee determined that Thompson's hip replacement was causally connected to her workplace fall and that she was entitled to workers' compensation benefits for her related medical care, including hip replacement surgery. Reviewing the testimony and evidence presented by both parties, the Referee found that Burley Inn and Milford Casualty were reasonable when they paid for the surgery to repair Thompson's labral tear, "even though their expert witness, Dr. Schwartsman, subsequently denied the labral tear was in any way related to [Thompson's] industrial accident." The Referee recognized that Schwartsman concluded that

Thomson suffered no hip injury in her workplace accident and that Burley Inn and Milford Casualty relied on Schwartsman's opinions as the basis of their denial for Thompson's hip replacement surgery.

The Referee also found that Schwartsman was the only doctor who opined that Thompson had not suffered a hip injury at work. In contrast, the Referee wrote that doctors May, Gustavel and Wathne[1] all held the opinion that Thompson had suffered a hip injury in her workplace fall, and Montalbano (a spine doctor) found no evidence that Thompson had a low back injury. The Referee noted that Schwartsman's opinion that Thompson hurt her back rather than her hip was not supported by the record. The Referee concluded that May's opinion, which was supported by Gustavel and Wathne, carried more weight than Schwartsman's testimony. The Referee thus determined that the weight of the evidence as a whole established that Thompson's work accident exacerbated her previously asymptomatic arthritic left hip.

As to the application of the *Neel* rule in a Medicaid case, Burley Inn and Milford Casualty argued below that the *Neel* full invoice rule should not apply when a Claimant's medical expenses are covered by Medicaid. The Referee disagreed, stating that the Commission did not have the authority to make an exception to the *Neel* rule:

> [Burley Inn and Milford Casualty] argue if the treatment in question is deemed compensable, the *Neel* Doctrine (*Neel v. Western Construction, Inc.*, 147 Idaho 146, 206 P.3d 852 (2009)) should not apply, because "the premise upon which *Neel* has been adopted simply does not apply here, as the surgery and subsequent medical care were fully covered by Medicaid, and Medicaid specifically prohibits balance billing." . . . [T]he *Neel* Court was aware of this practice:

>> The workers' compensation system is comparable to the system used by private insurance in which they enter into agreements with health care providers for contractual adjustments of the provider's bill. The provider then agrees that it will not seek to recover the contractually adjusted amount from the insured.

>> *Neel v. Western Const., Inc.*, 147 Idaho 146, 206 P.3d 852 (2009).

> However, the Court did not feel it necessary to create a different rule where providers who accept private insurance also agree to forgo balance billing of the patient.

> Rather than spend time analyzing in depth the history of *Neel*, its purpose and pitfalls, it is sufficient to note that *Neel* is a creature of Idaho's Supreme Court and if any carving is to be done on the doctrine, it is up to the Supreme Court, not

---

[1] Richard Wathne, M.D., is an orthopedic surgeon who conducted an IME on Thompson at the request of her attorney.

4

the Commission, to do the carving. By raising the issue herein, [Burley Inn and Milford Casualty] have preserved the issue for appeal.

On the third issue of attorney fees, Thompson argued that Burley Inn and Milford Casualty did not have reasonable grounds for denying her claim and, therefore, she should be awarded attorney fees under Idaho Code section 72-804. But the Referee found that Thompson failed to demonstrate that she was entitled to attorney fees.

The Commission entered an order that "approve[d], confirm[ed], and adopt[ed] the Referee's proposed findings of fact and conclusions of law as its own" on the same day the Referee's decision was issued. Burley Inn and Milford Casualty timely appealed.

## II.    ISSUES ON APPEAL

1. Does Burley Inn have standing to bring this claim?

2. Did the Commission err in determining that the *Neel* doctrine applied to Thompson's medical expenses?

3. Should the *Neel* doctrine require an employer to reimburse an employee's workers' compensation medical expenses at the full invoice amount if Medicaid has fully covered those medical expenses?

4. Should Thompson be awarded attorney fees on appeal?

## III.    STANDARDS OF REVIEW

In appeals from the Industrial Commission, this Court's review is limited to questions of law, "which include whether the Commission's factual findings are supported by substantial and competent evidence and the application of the facts to the law." *Hiatt v. Health Care Idaho Credit Union*, 166 Idaho 286, 290, 458 P.3d 155, 159 (2020) (citing *Harper v. Idaho Dep't of Labor*, 161 Idaho 114, 116, 384 P.3d 361, 363 (2016)). "Substantial evidence is more than a scintilla of proof, but less than a preponderance. It is relevant evidence that a reasonable mind might accept to support a conclusion." *Id*. (citing *Ehrlich v. DelRay Maughan, M.D., P.L.L.C.*, 165 Idaho 80, 83, 438 P.3d 777, 780 (2019)).

"Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Id*. (quoting *Ehrlich*, 165 Idaho at 83, 438 P.3d at 780). "[T]his Court views all the facts and inferences in the light most favorable to the party who prevailed before the Industrial Commission." *Id*. (quoting *Bell v. Dep't of Lab.*, 157 Idaho 744, 746–47, 339 P.3d 1148, 1150–51 (2014)).

5

## IV. ANALYSIS

### A. Burley Inn has standing to bring this appeal.

As a threshold matter, Thompson argues that Burley Inn[2] lacks standing to bring a case on behalf of Thompson's medical providers. Appellants argue that they have standing because the Commission's Order is a "financial injury in fact" and it requires Appellants to pay Thompson about $67,000 more than Medicaid paid the providers.

Standing is a threshold determination made by this Court before reaching the merits of the case. *Reclaim Idaho v. Denney*, 169 Idaho 406, 418, 497 P.3d 160, 172–73 (2021) (citing *State v. Philip Morris*, 158 Idaho at 874, 881, 354 P.3d, 187, 194 (2015)). "The inquiry 'focuses on the party seeking relief and not on the issues the party wishes to have adjudicated.'" *Id.* (citing *Philip Morris*, 158 Idaho at 881, 354 P.3d at 194).

"[T]o establish standing 'a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a like[lihood] that the injury will be redressed by a favorable decision.'" *Reclaim Idaho*, 169 Idaho at 419, 497 P.3d at 173 (citing *Philip Morris*, 158 Idaho at 881, 354 P.3d at 194). To satisfy the first element—an injury in fact—one must "allege or demonstrate" an injury that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.*

Thompson cites *St. Alphonsus Reg'l Medical Center v. Edmondson* for the proposition that there is no privity of contract between an employer and a worker's medical providers when an employer denies a worker's compensation claim and that worker seeks medical care on her own. 130 Idaho 108, 111, 937 P.2d 420, 423 (1997). In *Edmondson*, the Commission found the claim compensable, awarded benefits to the worker, and on appeal this Court held that the employer had to pay the final award to the worker—not the medical providers. *Id.* Thompson seems to argue that because there was no privity of contract between the employer who denied benefits and the medical providers in *Edmondson*, there is no privity of contract—and thus no injury which is required for standing—that permits Burley Inn (who denied Thompson's benefits) to bring a case on behalf of Thompson's medical providers. Appellants respond that *Edmonson* is not on point because they

---

[2] From the language in Thompson's opening brief, it appears she is only arguing that one of the two Appellants—Burley Inn—lacks standing to bring this appeal. On reply, Appellants do not make a distinction between Burley Inn and Milford Casualty on the standing issue.

have not brought this claim on the medical providers' behalf, and that they have never claimed that they can pay the medical providers directly rather than Thompson.

The parties seeking relief here are the Appellants—Burley Inn and Milford Casualty—not the medical providers. The medical providers are not a party to this case, and although Thompson claims that "Burley Inn asks this Court to consider the effect on the providers who have already accepted Medicaid as payment," no one has requested relief on the medical providers' behalf. Because Appellants have not requested relief for the medical providers, the privity of contract issue in *Edmonson* does not fit the facts here.

Turning to the three elements of standing, we conclude that: (1) Burley Inn has a potential injury, because its experience rating and workers' compensation premium may be affected by the payment required by the Commission's order; (2) the injury is caused by the Commission's order; and (3) the injury can be redressed by this Court reversing the Commission's order on that payment. Therefore, Burley Inn has standing to bring this appeal.

### B. The Commission did not err; the *Neel* doctrine still applies when medical expenses are paid by Medicaid.

Appellants next assert that "the Commission committed reversible error by requiring Appellants to pay the full invoice amount" because the *Neel* full invoice doctrine "does not apply" to workers' compensation claims in the Medicaid context. Appellants contend that the Commission erred and ask this Court to modify the *Neel* doctrine going forward.

Thompson argues that the Commission did not err because this Court already decided this issue in two previous cases: *Neel*, 147 Idaho at 149, 206 P.3d at 855; and *Millard v. ABCO Constr., Inc.*, 161 Idaho 194, 196–97, 384 P.3d 958, 960 (2016). Thompson points out that neither the *Neel* nor *Millard* decisions provided an exception to the full invoice requirement when a worker pays out of pocket or uses some form of personal health insurance to fund work-related medical expenses.

Although Appellants claim that the Commission erred, they do not argue that the Commission misstated the *Neel* rule or misapplied that rule to the facts here. In its order, the Commission correctly acknowledged that it has no right to modify a legal standard created by this Court when it wrote that "*Neel* is a creature of Idaho's Supreme Court and if any carving is to be done on the doctrine, it is up to the Supreme Court, not the Commission, to do the carving."

7

As mentioned above, the *Neel* doctrine holds that if an employer denies a claim, and the Commission later finds that claim to be compensable, the employer must pay the full invoiced amount of the Claimant's medical expenses. *Neel*, 147 Idaho at 149, 206 P.3d at 855. In this case, Appellants denied Thompson's workers' compensation claim for her hip replacement surgery, and Thompson's claim was later found by the Commission to be compensable. Thus, the two prongs of the *Neel* doctrine are met, and consistent with our prior holding, the Commission ordered Appellants to pay Thompson the full invoice amount. As we discuss below, the Commission did not err when it applied the *Neel* doctrine to the facts of Thompson's case and ordered Appellants to pay for Thompson's related medical care.

The centerpiece of Appellants' argument is that the *Neel* full invoice doctrine should not apply when Medicaid pays medical expenses for a workers' compensation claim. Appellants argue that this Court's policy rationale in *Neel*—which Appellants assert was to protect workers from being responsible for unpaid medical expenses in a workers' compensation claim—should not apply in the Medicaid context because Medicaid prohibits "balance billing."[3] Appellants argue that requiring employers to pay the full invoice amount—which in this case is three times the amount paid by Medicaid—imposes a financial penalty on the employer and creates a windfall for the worker. As explained below, we disagree. We will discuss the parties' arguments in turn.

*1. Applying principles of stare decisis, we reaffirm the Neel doctrine.*

Thompson argues that this Court should uphold its precedent and affirm the full invoice rule under the principles of *stare decisis*. Thompson maintains that *stare decisis* applies because this Court already decided this issue in *Neel* and *Millard. Neel*, 147 Idaho at 149, 206 P.3d at 85; *Millard*, 161 Idaho at 197, 384 P.3d at 96. Thompson argues that the *Neel* and *Millard* Courts knew that claimants cannot be held financially liable for work-related medical expenses, but chose to apply the full invoice rule "in the interest of fairness" specifically to "avoid awarding unearned incentives or windfalls to sureties or claimants." *Neel*, 147 Idaho at 149, 206 P.3d at 855. Thompson further argues that Appellants' characterization of their request as a narrow exception to the *Neel* doctrine would, in fact, be an abrogation of the rule because almost all non-industrial[4]

---

[3] "'Balance billing' means charging, billing, or otherwise attempting to collect directly from an injured employee payment for medical services in excess of amounts allowable in compensable claims. . . ." I.C. § 72-102(2).

[4] Workers' compensation insurance is also known as "industrial" insurance. "Non-industrial" insurance is insurance that is not workers' compensation insurance. We use it here to refer to personal health insurance held by the employee.

insurance (including private insurance, such as Blue Cross, or public benefits, such as Medicaid) includes either contractual or statutory cost-adjustments. Thompson asserts that the *Neel* doctrine should be affirmed because Appellants have not shown that the doctrine is "manifestly wrong," a prerequisite for disregarding *stare decisis*.

Appellants primarily contend that *stare decisis* applies only when a party asks this Court to overturn a previous holding in its entirety. As a result, because Appellants have asked this Court to modify an existing holding, they argue that *stare decisis* does not apply. Appellants also state that *stare decisis* does not apply to their request because this Court has not previously been presented with facts about how Medicaid affects reimbursement in a workers' compensation case. Thus, the Court has not previously been asked to address how state and federal Medicaid laws affect the policy rationale supporting the *Neel* doctrine.

"The rule of *stare decisis* dictates that we follow [controlling precedent], unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Gomez v. Crookham Co.*, 166 Idaho 249, 259, 457 P.3d 901, 911 (2020) (citing *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.3d 978, 983 (1990)). "Principles of *stare decisis*, like judicial restraint, compel [appellate courts] to not lightly reject precedent merely because there has been a change in the makeup of the Court or because the precedent was not unanimous," or if the current Court would decide a precedent-setting case differently. *Id.*

Deciding whether the principle of *stare decisis* applies depends first on whether the Court has actually decided an issue or whether the case presents an issue of first impression. While Appellants are correct that the Court has not previously addressed the specific issue of workers' compensation reimbursement for Medicaid recipients, Thompson pointed out that Medicaid reimbursement is not substantially different from the private insurance and public insurance that the Court was aware of in *Neel* and *Millard*. Because Appellants are asking this Court to change an existing doctrine that would otherwise control the outcome, we conclude that analyzing this case under *stare decisis* is appropriate.

Appellants have provided no evidence that the *Neel* doctrine is "manifestly wrong" or has been "proven over time to be unjust or unwise." Nor have Appellants provided any evidence that the *Neel* doctrine has created "continued injustice" by applying the full invoice rate when an employer denies a compensable workers' compensation claim made by a Medicaid recipient.

9

Instead, Appellants have argued that awarding a workers' compensation amount that exceeds the Medicaid expenses creates a windfall for the claimant. But as we will explain in more detail below, the windfall to claimants alleged here prevents the same windfall from accruing to employers and sureties by encouraging them to approve legitimate workers' compensation claims. Therefore, this does not amount to a "continued injustice" under principles of *stare decisis*. We conclude that none of the conditions necessary to overturn a prior decision of this Court are present here. While this decision can be upheld solely on the basis of *stare decisis*, we also find that Thompson's additional arguments, as discussed below, show that the *Neel* doctrine is not manifestly unjust.

2. *The Neel doctrine is consistent with Idaho's workers' compensation law.*

Thompson asserts that the *Neel* doctrine is rooted in Idaho's statutory and administrative workers' compensation law. Appellants do not challenge this principle. To evaluate Thompson's argument, we consider the relevant provision of Idaho's workers' compensation law. Idaho Code section 72-432(1) states:

> [T]he employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.

I.C. § 72-432(1).

"The interpretation of a statute is a question of law over which this Court exercises de novo review." *Arreola v. Scentsy, Inc.*, 172 Idaho 251, ___, 531 P.3d 1148, 1152 (2023) (citing *Kelly v. TRC Fabrication, LLC*, 168 Idaho 788, 791, 487 P.3d 723, 726 (2021)). This Court "liberally construe[s] the provisions of the workers' compensation law in favor of the employee, in order to serve the humane purposes for which the law was promulgated." *Atkinson v. 2M Company, Inc.*, 164 Idaho 577, 580, 434 P.3d 181, 184 (2019) (citing *Murray-Donahue v. Nat'l Car Rental Licensee Ass'n*, 127 Idaho 337, 340, 900 P.2d 1348, 1351 (1995)). "The humane purposes which [the workers' compensation law] serves leave no room for narrow, technical construction." *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996).

Contrary to the Appellants' request in this case, Idaho's workers' compensation law and its related IDAPA rules have not limited employers' liability to the actual cost of a workers' compensation claim. This is significant because other states have capped employer liability in their workers' compensation laws. For example, Alabama's workers' compensation law states that:

10

> The employer, where applicable, shall pay the <u>actual cost</u> of the repair . . . arising out of and in the scope of employment . . . and the employer . . . shall pay an amount not to exceed the prevailing rate or maximum schedule of fees . . . of reasonably necessary medical and surgical treatment . . . .
>
> . . . .
>
> If an insurer of the employee or benefit association has paid or is liable for the employee's medical, surgical, and hospital service or for a part thereof, or if the employee is entitled to the same or a part thereof, from any source whatever by virtue of any agreement or understanding of law, state or federal, without any loss of benefit to the employee, the employer shall not be required to pay any part of the expense. If the benefits are insufficient to pay all the employee's expense, the employer shall be liable for the deficiency only.

ALA. CODE § 25-5-77(a) (emphasis added). The Idaho Legislature could have included a similar provision if it intended to limit employer liability to actual expenses or post-insurance deficiencies. It did not do so.

IDAPA 17.01.01.803 provides a schedule of "Acceptable Charges For Medical Services Provided by Physicians Under The Idaho Worker's Compensation Law" that lists the dollar amount that medical providers may charge for medical services performed within the workers' compensation system. IDAPA's "acceptable charges" are less than the full invoice rates a medical provider would otherwise be allowed to charge to encourage employers to swiftly approve workers' compensation claims "needed immediately after an injury" under Idaho Code section 72-432(1).

*Neel*, which held that claims denied by an employer are paid outside the workers' compensation system, is consistent with the last sentence of Idaho Code section 72-432(1). That section states: "[i]f the employer fails to provide [reasonable medical care], the injured employee may do so at the expense of the employer." Because *Neel* held that denied claims are paid outside the workers' compensation system, those claims are not eligible for reduced charges provided for in IDAPA 17.01.01.803. If such claims are found payable later, the employer must pay the full invoice amount. *Neel*, 147 Idaho at 149, 206 P.3d at 855. Accordingly, the *Neel* doctrine upholds and reinforces Idaho's workers' compensation law by treating approved and denied claims differently. Employers who approve legitimate claims—rather than deny them—benefit by paying the reduced rates set forth in the IDAPA acceptable charges schedule. Employers are thus dissuaded from denying legitimate claims, because if those claims are later found to be compensable, the employer must pay the full invoice rate. Thus, we conclude that the *Neel* doctrine reflects the policy underpinning Idaho's workers' compensation law.

11

*3. Granting the Appellants' request to modify the Neel doctrine would conflate workers' compensation law with tort law.*

Appellants argue that applying *Neel* in a Medicaid context would result in an unintended windfall to an injured worker. Thompson responds that Appellants' focus on matching the remedy to the harm, rather than focusing on the prompt payment of costs, relies on a principle of tort law that does not apply in workers' compensation law.

This Court has recognized that tort law and Idaho's workers' compensation law are distinct. In *Maravilla v. J.R. Simplot Co.*, 161 Idaho 455, 462, 387 P.3d 123, 130 (2016), this Court explained that Idaho's workers' compensation law was designed for the express purpose of removing an employer's tort liability for work-related accidents:

> The flaw in the Commission's reasoning is that it attempts to equate worker's compensation benefits with tort damages. They are not equivalent. The Worker's [sic] Compensation Act was a compromise between injured workers and their employers and was specifically intended to remove industrial accidents from the common law tort system. *Blake v. Starr*, 146 Idaho 847, 851, 203 P.3d 1246, 1250 (2009); *Yount v. Boundary Cty.*, 118 Idaho 307, 307, 796 P.2d 516, 516 (1990) ("[S]uch being the *quid pro quo* for eliminating the previous remedy of seeking a tort recovery from employers.").

*Maravilla*, 161 Idaho at 462, 387 P.3d at 130.

In *Sharp v. Thomas Brothers Plumbing*, this Court went further and distinguished tort law from workers' compensation law:

> [T]his is not a tort case. We take this opportunity to emphasize a critical point: workers' compensation law is not synonymous with, nor a branch of, tort law. . . . While there are obvious resonances between tort and workers' compensation law— both seek relief for the injured—they are rooted in different soil. The aim of tort law is to remedy private wrongs, to settle accounts between tort victims and tortfeasors. Thus, in tort, the fundamental test of liability is fault—i.e., whether the defendant's wrongful conduct is to blame for the plaintiff's injury.

> In workers' compensation law, an employer's fault is not a precondition of liability. This is because the workers' compensation system is ultimately about allocating costs, not remedying wrongs . . . [T]he purpose of the workers' compensation system is to provide "prompt payment of benefits regardless of fault or blame" to employees injured in the course of covered employment "based on the theory that the cost of work accidents is a legitimate part of the cost of production."

*Sharp v. Thomas Bros. Plumbing*, 170 Idaho 343, 353, 510 P.3d 1136, 1146 (2022) (citations omitted).

Thus, this Court's prior cases demonstrate that workers' compensation law and tort law

12

share a similar goal to redress injuries, but beyond that, the two systems are vastly different. In workers' compensation law, employers are required to provide reasonable care "*immediately* after an injury or manifestation of an occupational disease, and for a reasonable time thereafter." I.C. § 72-432(1) (emphasis added). In exchange for providing that "sure and certain relief," employers need not admit fault and their liability for certain medical costs are capped at the amounts set forth in the IDAPA schedule of approved charges. *See* I.C. § 72-201; IDAPA 17.01.01.803. But the statute makes clear that if an "employer fails to provide [such speedy relief], the injured employee may [obtain relief herself] at the expense of the employer." *Id*.

In tort law, such as an action for negligence, a plaintiff must prove

(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage. . . . Self-evident in the formulation of these elements is that a party cannot be held liable for negligence when there was no legal duty imposed under the circumstances.

*Oswald v. Costco Wholesale Corp.*, 167 Idaho 540, 550, 473 P.3d 809, 819 (2020) (citation and quotation marks omitted). Thus, the obligation to pay damages is dependent on the victim's obligation to establish each of these elements. *Id*. Damages are not capped, save in the case of non-economic or punitive damages. *See* I.C. §§ 6-1603, 6-1604(3). Also, in tort cases the victim's damages are generally awarded in a lump sum, rather than allowing payment to extend for a "reasonable time thereafter." Tort damages can include compensation beyond the actual cost of medical expenses, including for pain and suffering, which are not included in workers' compensation reimbursement. *See Izaguirre v. R & L Carriers Shared Servs*., LLC, 155 Idaho 229, 233, 308 P.3d 929, 933 (2013).

Considering the distinction between these two systems, and particularly bearing in mind the statutory mandate that when an "employer fails to provide [speedy relief], the injured employee may [obtain relief herself] at the expense of the employer," Idaho Code section 72-432(1), modifying the *Neel* doctrine in the Medicaid context could undercut the intent of this statute and impermissibly mingle principles of tort and workers' compensation law. Employers could be motivated to deny claims—and thereby delay payment to injured workers—in the hope of only having to reimburse for amounts paid by Medicaid, which, as this case demonstrates, are significantly lower than the actual amounts charged by medical providers. While this type of delay in receiving an award of damages may be typical in tort law, in our view it conflicts with the

13

purpose behind workers' compensation's "grand bargain," and the plain language of section 72-432(1). *See Smith v. Excel Fabrication, LLC*, 172 Idaho 725, ___, 535 P.3d 1098, 1102 (2023).

    4. *The Neel and Millard Courts understood that a claimant's financial liability for medical expenses when an employer denies a workers' compensation claim could be decreased by the claimant's non-industrial insurance.*

Appellants argue that it is proper for this Court to adopt their proposed modification to the *Neel* doctrine in part because this Court has not previously considered the *Neel* doctrine as it specifically relates to Medicaid recipients. While acknowledging that Medicaid was not directly at issue in these earlier cases, Thompson contends that this Court was aware that it had created no exceptions to the full invoice doctrine when it adopted the *Neel* rule, and when it affirmed the *Neel* rule in *Millard*. Thompson argues that, in both *Neel* and *Millard*, some amount of the injured workers' medical expenses was likely covered by a non-industrial health insurer that had contractual agreements to reduce the invoiced amount.

In *Neel*, this Court framed the issue as "whether a reasonableness review is permitted when a surety initially denies a claim, the claimant is then required to enter into private contractual agreements for medical care, and the claim is thereafter deemed compensable by the Commission." *Neel*, 147 Idaho at 147, 206 P.3d at 853. The Court summarized Neel's argument for the full invoice rule:

> Mr. Neel claims that his non-industrial medical insurance paid for part of his medical treatment, but a portion of his treatment was provided at a time when Mr. Neel was uninsured due to the expiration of such medical insurance, leaving him with an unfulfilled contractual obligation. Mr. Neel contends that not requiring Surety to pay the full invoiced amount is analogous to balance billing because he would owe money to the medical providers beyond the amount he received from Surety.

*Neel*, 147 Idaho at 148, 206 P.3d at 854.

Importantly, the final sentence of this quotation was followed by a footnote, where the Court wrote: "The record on appeal does not show how much, if anything, Mr. Neel is left owing." *Neel*, 147 Idaho at 148 n.3, 206 P.3d at 854 n.3. This footnote makes clear that the Court knew that claimants in general, and Neel in particular, may or may not owe their medical providers more than the amount covered by their personal health insurance.

Observing that the surety argued that all invoices (whether the claim was initially denied by the employer or not) should be reviewed for reasonableness and that Neel argued none should be reviewed for reasonableness, the Court wrote that "[i]n the interest of fairness, and to avoid

14

awarding unearned incentives or windfalls to sureties or claimants, we construct a middle-ground resolution that takes into account the policy behind the Workers' Compensation Law." *Neel*, 147 Idaho at 149, 206 P.3d at 855. With that goal in mind, the Court adopted the *Neel* doctrine, holding that when an employer accepts a workers' compensation claim, the employer may review those invoices for reasonableness (and reduce the amount owed) as permitted by the schedule of acceptable charges set forth in IDAPA. *See* IDAPA 17.01.01.803. But the Court also wrote that if an employer denies a claim that is later found to be compensable, the employer must pay the full invoice amount. *Neel*, 147 Idaho at 148, 206 P.3d at 854. We essentially placed the cost of "guessing wrong" on the employer and surety when a claim is later found compensable.

The *Neel* Court did not attempt to align the amount the surety paid with the balance incurred by the worker, even though the surety had argued that the prohibition on balance billing applied to all claims (whether accepted or denied). The Court was also aware that Neel might not owe a balance. Therefore, we conclude that the Court was aware that a claimant's financial liability for medical expenses could be decreased by the claimants' non-industrial insurance, but we chose not to adopt any exceptions that would allow the employer to pay less than the full invoice cost of the claimant's medical care.

Thompson argues that this Court declined to adopt exceptions to the *Neel* doctrine in *Millard*. In *Millard*, the Court applied the *Neel* doctrine to two sets of workers' compensation claims made by Millard. *Millard*, 161 Idaho at 197, 384 P.3d at 961. The Court found that only one set of Millard's claims met both prongs of the *Neel* doctrine and therefore the employer only had to pay the full invoice rate on that set of claims. *Id.*

Similar to the *Neel* case, two footnotes in the *Millard* decision establish that the Court knew that Millard had health insurance through the Veterans Administration and Medicare. *See Millard*, 161 Idaho at 195 n.2, 197 n.3, 384 P.3d at 959 n.2, 961 n.3. Even so, whether Millard would be liable for the full invoice amount of his medical expenses was not a factor in the *Millard* Court's analysis. Instead, the Court simply applied the *Neel* doctrine to both of Millard's claims and found that one set of claims qualified for reimbursement of the full invoice amount, while the other set of claims did not. *Id.* at 197, 384 P.3d at 961.

Taken together, the *Neel* and *Millard* cases show that this Court was aware of the potential for a claimant to receive payment for a denied claim that exceeded the claimant's liability for that claim, but we upheld the principles behind Idaho's workers' compensation law by not making

15

exceptions to the full invoice rule.

Thompson argues that the Commission has since understood and correctly applied this rationale when it invokes the *Neel* doctrine. Thompson cites two cases, *Aspiazu v. Homedale Tire Serv.*, IC 1984-477235, 2012 WL 369793, at *9–11 (Idaho Ind. Com. Jan. 18, 2012), and *George v. Sears*, IC 2014-008780, 2016 WL 6884636, at *9 (Idaho Ind. Com. July 20, 2016), to make this point. Both cases addressed whether—and why—the *Neel* doctrine applied to cases in which the Claimant's personal health insurance covered some portion of their workplace injury medical expenses. *Aspiazu*, 2012 WL 369793, at *9–11; *George*, 2016 WL 6884636, at *9. We find the Commission's reasoning sound and note it in resolving the question before us.

In *Aspiazu*, an employee sought an award for medical expenses after his employer denied workers' compensation benefits. *Aspiazu*, 2012 WL 369793, at *9–11. In determining the correct award amount for Aspiazu's prescriptions, the Commission concluded that "[p]ursuant to *Neel*, we do not deem it important to know what Claimant's insurance company actually paid to satisfy its obligation under whatever contractual arrangement it had with Walgreens." *Aspiazu*, 2012 WL 369793, at *11.

In reaching that conclusion, the Commission wrote that "[t]he underlying premise of *Neel* is that where the workers' compensation surety has denied responsibility for the payment of medical benefits, claimant is in the wilderness: He must go out and strike his own bargain with providers, and is potentially liable for 100% of the invoiced amount of bills for services." *Aspiazu*, 2012 WL 369793, at *9. While acknowledging that using *Neel's* full invoice rate could "result in a windfall to Claimant in certain situations," the Commission wrote that "[w]e believe the Court was aware of the possibility of an outcome like this, yet felt its ruling was necessary to prevent other kinds of mischief which would be more damaging to the Workers' Compensation system." *Id.* at *10. This "mischief" was possible because it was "common knowledge" that most insurance carrier reimbursement rates were much lower than the Industrial Commission's fee schedule. *Id.* The Commission wrote:

> This could encourage sureties to deny responsibility for medical care knowing that if proved wrong, the surety's exposure would be less than it would be for an accepted claim. We believe that the Court considered these, and other scenarios, in striking the balance that would avoid "awarding unearned incentives or windfalls to sureties or claimants." *Neel*, 147 Idaho at 149.

*Aspiazu*, 2012 WL 369793, at *10-11.

16

In *George*, the Commission faced a question like the one in *Aspiazu*. A claimant requested the *Neel* full invoice rate despite having paid less than that amount in actual medical bills. *George*, 2016 WL 6884636, at \*9. The Commission noted that the *Neel* full invoice "rationale is called into question where, as here, Claimant is only obligated to satisfy a $35,002.09 subrogation claim on billed charges of $72,478.36." *Id.* "In such a setting, what is the justification for making an award to Claimant of 100% of the billed charges in question, i.e. $72,478.36?" *Id.* Answering its own question, the Commission explained:

> We addressed this precise question in *Aspiazu v. Homedale Tire Serv.*, 2012 IIC 004 (2012), and concluded that the Court's ruling in *Neel* extended to this scenario as well, even though it could conceivably result in a "windfall" to Claimant. We concluded that the *Neel* Court did what it did in order to avert greater mischief that might result if, in scenarios like the one before us, [a] surety is allowed to satisfy its obligation to pay the medical bills incurred during the period of denial simply by satisfying the subrogation claim. We see no reason to depart from the conclusions we reached in *Aspiazu* and conclude that Claimant is entitled to receive a *Neel* award equal to 100% of the billed charges incurred during the period of denial, or $72,478.36, whichever is greater.

*Id.*

In a footnote cited in the above quotation, the Commission observed that "[h]ow much of a windfall Claimant will enjoy in this and similar scenarios is debatable." *George*, 2016 WL 6884636, at \*9 n.3. "Remember, he must also compensate his attorney for the fees and cost incurred in obtaining the *Neel* award." *Id.*

Appellants agree with Thompson's assertion that the Commission has applied the full invoice rule to every *Neel*-type case since we announced the decision in 2009. But Appellants contend that the *Aspiazu* and *George* cases are not dispositive here because neither involved Medicaid payments. While that is a distinguishing factor here, and we are not bound by the Commission's decisions, we acknowledge the Commission's apt understanding of the *Neel* doctrine rationale and support its conclusions, including those about the "mischief" that would be afoot with a ruling different from what we reach today.

5. *Excluding Medicaid recipients from the Neel doctrine would undermine Idaho's workers compensation law.*

Thompson argues that modifying the *Neel* doctrine as Appellants request will create an incentive for employers to deny workers' compensation claims of workers. Thompson argues that sureties will be motivated to deny legitimate workers' compensation claims, under the calculation

17

that if after litigation, they have to pay at all, it will be at the lower Medicaid amount.

Appellants disagree. They argue that there is "no basis" for Thompson's allegation that modifying *Neel* as requested will cause sureties to improperly handle workers' compensation claims. Appellants maintain that Thompson's argument is without evidence, entirely speculative, and ignores two things. First, Appellants point out that they are not asking the Court to overturn the entire *Neel* doctrine; instead, they are asking the Court to hold that the purpose of the *Neel* doctrine does not apply to workers' compensation claims made by Medicaid recipients because those workers will not be liable for the full invoice amount of their medical care. Second, Appellants argue that Idaho Code section 72-804, which awards attorney fees if an employer or surety denies a workers' compensation claim without reasonable grounds, will deter sureties from improperly denying claims.

We agree with Thompson that excluding Medicaid recipients from the *Neel* doctrine could induce employers to deny workers' compensation claims of workers they suspect of being Medicaid recipients. The significant cost reduction, even if a claimant litigates and wins at the Commission or before this Court, could motivate some employers to deny claims they may have otherwise approved.

The problem is compounded because, unlike other types of non-industrial insurance, Medicaid eligibility is determined by income. A person's Medicaid eligibility is not difficult for an employer to predict because employers know how much they pay their employees and whether those employees have access to independent health insurance—perhaps subsidized by the employer.

Excluding Medicaid recipients from the *Neel* full invoice doctrine could visit particular hardship on injured workers least able to bear it, and because of their financial situation, also least likely to be able to afford litigation to contest the employer's denial of benefits. In that scenario, an injured worker could be denied benefits the legislature intended them to receive *speedily* under Idaho Code section 72-432.

We are not convinced that the threat of attorney fees is enough to deter employers from denying workers' compensation claims under the circumstances presented here. While that is possible, it incorrectly assumes that injured workers who receive Medicaid will be able to litigate, and that the attorney fees award will be more than the avoided medical expenses. Curiously, Appellants attempt to demonstrate the effectiveness of the attorney fee-deterrent by looking to this

18

case. But here, the Commission declined to award Thompson attorney fees despite some evidence that Appellants denied Thompson's claim without reasonable grounds after it became apparent that she needed a second hip surgery.

From this, we conclude that excluding Medicaid recipients from the *Neel* full invoice doctrine could create an incentive for employers to deny otherwise legitimate workers' compensation claims, which would undermine the purpose of Idaho's workers' compensation law.

### C. Thompson is not entitled to attorney fees on appeal.

Thompson requests attorney fees on appeal under Idaho Code section 72-804 and Idaho Appellate Rule 11.2. Thompson is not entitled to attorney fees under I.A.R. 11.2 because she failed to make any argument under that rule in the body of her brief. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 863, n.3, 421 P.3d 187, 194, n.3 (2018) (declining to award costs when the party failed to articulate why they were entitled to costs on appeal).

That said, Thompson requests that this Court award her attorney fees on appeal under Idaho Code section 72-804 because she argues Appellants brought this appeal without reasonable grounds. Thompson argues she is entitled to attorney fees under this standard because the issue has already been decided in *Neel* and *Millard*, and the principles of *stare decisis* require that those holdings apply without modification in this case.

Thompson points to *Mayer v. TPC Holdings, Inc.*, 160 Idaho 223, 370 P.3d 738 (2016), in support of her claim that Appellants are arguing a "distinction without a difference" that does not constitute reasonable grounds to contest a claim under Idaho Code section 72-804. In *Mayer*, this Court awarded attorney fees to the Claimant in a workers' compensation case after the employer argued that the term "permanent disability" meant the same thing as "permanent impairment," even though each term was defined differently in the relevant code section. *Mayer*, 160 Idaho at 228–29, 370 P.3d at 743–44.

Appellants maintain that, contrary to *Mayer*, they have made a "reasoned and principled argument" that there is a meaningful difference between Medicaid and non-Medicaid workers' compensation cases because the policy rationale of *Neel* does not fit the circumstances present in Medicaid cases.

Idaho Code section 72-804 provides that an employer must pay reasonable attorney fees when an employer neglects or refuses to pay an injured worker's compensation provided by law without reasonable grounds. *Watkins v. City of Ponderay*, 172 Idaho 461, ___, 533 P.3d 1257,

19

1261 (2023) (citing I.C. § 72-804). [A]ttorney fees are also awarded under section 72-804 if an employer or surety contests a claim for compensation "without reasonable ground" through an appeal that is "frivolous[.]" *Arreola*, 172 Idaho at ___, 531 P.3d at 1160 (*citing Baker v. La. Pac. Corp.*, 123 Idaho 799, 803, 853 P.2d 544, 548 (1993) (awarding fees on appeal when the employer's arguments simply asked the Court to re-weigh the evidence)).

Although we are not persuaded to modify the *Neel* doctrine as requested by Appellants, they have made reasonable arguments that *Neel* should not be applied in the Medicaid context. *Neel* and *Millard* did not specifically address Medicaid cases, and so we conclude that this appeal was not frivolous. Therefore, Appellants did not appeal without reasonable grounds, and accordingly, we hold that Thompson is not entitled to attorney fees on appeal.

## V.     CONCLUSION

We hold that: (1) Burley Inn has standing to bring this appeal; (2) the Commission did not err in determining that the *Neel* doctrine applies to Thompson's medical expenses; (3) the *Neel* doctrine requires Burley Inn and Milford Casualty to pay the full invoice amount for all denied, but compensable, claims; and (4) Thompson is not entitled to attorney fees on appeal. She is entitled to costs as a matter of right. I.A.R. 40(a). As a result, the Industrial Commission's decision is affirmed.

JUSTICES BRODY, MOELLER, and ZAHN, and PRO TEM JUSTICE HOAGLAND CONCUR.

20